## Manuel Rogers et al. v. Robert Driscoll et al.

### Decided March 2, 1910.

**1.—Special Issues—Practice.**

W]hen a case is submitted to a jury on special issues, the generality of one of the questions constitutes no objection to the answer when more specific instruction was not asked.

**2.—Same—Answers not Inconsistent.**

To one question, whether or not the debtor transferred the property in controversy with intent to hinder and delay his creditors, the jury answered, "No;" to another question, whether or not the debtor used the cash, or substantially all of it, received from the sale of said property in the payment of preexisting debts, the jury answered in the affirmative. Held, the answers were not inconsistent even when taken to mean that he did not so apply all of the cash.

**3.—Statute of Frauds—Right to Prefer Creditors.**

An insolvent debtor has the legal right to pay certain of his creditors in full and leave others unpaid, and to sell property with such intent and purpose. But when he sells his property with the intent of applying only a part of the proceeds to the payment of certain debts and to use the balance for the purpose of extorting an unjust compromise from other creditors, the sale is in contravention of the statute of frauds. Evidence considered and held not to warrant a finding that a sale of property by an insolvent debtor was not made with intent on his part to hinder and delay his creditors.

**4.—Same—Insolvent Debtor—Innocent Purchaser.**

Evidence considered and held sufficient to support a finding that a fraudulent intent on the part of an insolvent debtor in the sale of his property was not known to or participated in by the purchaser, and the sale was therefore valid as against existing creditors.

**5.—Charge—Failure to Submit Issue—Practice.**

A failure by the court to submit an issue raised by the evidence is not reversible error in the absence of a request to submit the same.

**6.—Same—Fraudulent Conveyance.**

The issue being whether or not a sale of land by an insolvent debtor was fraudulent, the court submitted the following issue to the jury: "At the time of the transfer did D. (the purchaser) have knowledge of facts and circumstances sufficient to cause an honest man of ordinary prudence to make enquiry, etc.?" Held, the use of the word "honest" in that connection was not error.

**7.—Injunction—Refusal to Dissolve.**

There can be no merit in an assignment of error that the trial court erred in refusing to sustain a motion to dissolve an injunction, when on final hearing the injunction is properly perpetuated.

**8.—Same—Legal Remedy—Rule.**

The rule that equity will not interpose when the party applying for an injunction has an adequate remedy at law, is not one which absolutely denies jurisdiction to a court of equity. It is rather a rule of convenience and propriety which the defendant or the court may avail itself of and which the defendant may waive. Therefore when this objection to an injunction is presented for the first time in an amended answer on the eve of trial, it was not error for the court to overrule the same.

**9.—Attorney and Client—Notice to Attorney.**

When the employment of an attorney is simply to prepare the deed and examine the title to a tract of land for a prospective purchaser, knowledge that the attorney may have acquired prior to and independently of that employment as to the fraudulent intent of the vendor of the land, can not be imputed to the client.

**10.—Jury Trial—Province of Jury.**

Where the evidence is conflicting, a jury has the right to reject the testimony of one of the parties and accept exclusively the testimony of another.

Appeal from the District Court of Duval County, Texas.   Tried below before Hon. W. B. Hopkins.

*Denman, Franklin & McGown,* for appellants.—As the undisputed evidence in the case showed that Parr whilst insolvent had conveyed all of his property to Robert Driscoll with the intent to hinder and delay his creditors, and that the legal effect of the transfer of his property was to delay and hinder his creditors, and that of all this Driscoll had knowledge or notice when he purchased and, notwithstanding, paid Parr part of the consideration in cash, without seeing to the application of the cash to the payment of any of the creditors of Parr, the conveyance to Driscoll was void as to Parr's creditors, and the verdict of the jury is without any evidence to support it and contrary to the undisputed evidence in the case.   Jacobs-Bernheim & Co. v. Totty, 76 Texas, 349; Blum v. McBride, 69 Texas, 63; Elser v. Graber, 69 Texas, 223 to 226; Oppenheimer v. Halff, 68 Texas, 409; Seligson v. Brown, 61 Texas, 180; Traylor v. Townsend, 61 Texas, 147; Houston & T. C. R. Co. v. Shirley, 89 Texas, 98; Miller v. Jannett, 63 Texas, 82; Blum v. Simpson, 71 Texas, 528, id., 66 Texas, 84; Proetzel v. Buck Stove Co., 26 S. W., 1110; Sweeney v. Conley, 71 Texas, 546.

That the transaction being fraudulent, the payment of the debt to Mrs. Collins gives no right to Driscoll, see: Lambeth v. McClinton, 65 Texas, 108; Elser v. Graber, .69 Texas, 223 to 226; Cox v. Miller, 54 Texas, 27; Mansur & Tebbetts Co. v. Jones, 45 S. W., 41; Greig & Jones v. Rice, 44 S. E., 729; Milwaukee & Minn. Ry. Co. v. Souter, 80 U. S., 543; Kohl v. Sullivan, 21 Atl., 247.

See also as to what constitutes notice: Mills v. Howeth, 19 Texas, 259; LeGierse v. Whitehurst, 66 Texas, 246; Dodd v. Gaines, 82 Texas, 429.

And as to where duty to inquire arises and effect of failure to exercise: Kansas M. P. Co. v. Sherman, 32 L. R. A., 3; Walker v. Collins, 50 Fed., 742; Brittain v. Crowther, 54 Fed., 298; Smith v. Collins, 10 So., 339.

See also as to facts putting purchaser on notice: Crawford v. Kirksey, 28 Am. Rep., 709; Carter v. Coleman, 2 So., 354; Dyer v. Taylor, 7 S. W., 258; Green v. Tantum, 19 N. J. Eq., 110; Ewing v. Teague, 29 S. W., 401.

That McGown, receiver, was creditor entitled to protection of statute, although claim not reduced to judgment at time of conveyance: Tucker v. Pennington, 45 S. W., 313; Frees & Sons v. Baker, 81 Texas, 221.

The petition showed no grounds for interference by a court of equity in the sale of the property involved in this suit under the execution against Parr on the judgment held against him by McGown, receiver. If the property involved belonged to Driscoll and not to Parr, a sale under the execution would not have passed Driscoll's title nor clouded same, and his remedy at law was adequate. Carlin v. Hudson, 12 Texas, 202; Whitman v. Willis, 51 Texas, 421; Kennard v. Mabry, 78 Texas, 158; Mann v. Wallis, 75 Texas, 613; Purinton v. Davis, 66 Texas, 455.

*G. R. Scott & Pope* and *R. L. Ball*, for appellees.—If an insolvent seller of property applies the money received by him for said property (or substantially all of it) to the payment of his debts, the purchaser is relieved of any and all legal obligation of seeing that said money is applied to the payment of the seller's debts. Ellis v. Valentine, 65 Texas, 532, 547; Sanger Bros. v. Colbert, 84 Texas, 668, 673; Haas v. Kraus, 86 Texas, 687, 689; Meyer Drug Co. v. Durham, 35 Texas Civ. App., 71.

An insolvent debtor may prefer one or more of his creditors, and may by any suitable means appropriate his property to the payment or part payment of the just claims of one or more of his creditors to the exclusion of the others. Ellis v. Valentine, 65 Texas, 532, 544; Smith & Co. v. Whitfield, 67 Texas, 125; Elser v. Graber, 69 Texas, 222, 225; Frees & Son v. Baker, 81 Texas, 216, 220; Wood v. Castleburg, 34 S. W., 653; Head v. Bracht, 40 S. W., 630.

It is within the discretion of the court whether a case shall be submitted to the jury on special issues. Rev. Stats., art. 1331; Texas & P. Ry. Co. v. Miller, 79 Texas, 78, 84; Galveston, H. & S. A.

Ry. Co. v. Jackson, 92 Texas, 638; Woodmen of the World v. Locklin, 28 Texas Civ. App., 486.

The reasonable market value of property alleged to have been fraudulently transferred in connection with the price paid, was and is a proper issue in determining the good or bad faith of Archie Parr in the transaction, and in determining whether the transaction had the element of insufficient purchase price, pointing to an intent on the part of Parr to defraud, and a consequent notice or suggestion of such intent to the purchaser, Driscoll. Ellis v. Valentine, 65 Texas, 532, 548; Sanger Bros. v. Colbert, 84 Texas, 668, 673; Bruce v. Koch, 94 Texas, 192, 194; Myer Bros. Drug Co. v. Durham, 35 Texas Civ. App., 71.

Knowledge on the part of the vendee of property of the insolvency of the vendor, is not sufficient to taint the transaction with fraud as to the vendee; but there must be the further knowledge on the part of the vendee of a fraudulent intent on the part of the vendor. And an issue having been joined as to the knowledge of Driscoll of Parr's intent, it was proper and became the duty of the court to submit said question No. 5 to the jury. Dittman v. Weiss, 31 S. W., 67, 70; Sanger Bros. v. Colbert, 84 Texas, 668, 672; LePage v. Slade, 79 Texas, 473, 477; Meyer Bros. v. Durham, 35 Texas Civ. App., 71; Texas Drug Co. v. Shields, 20 Texas Civ. App., 274; Armstrong Co. v. Elbert, 14 Texas Civ. App., 141; Kopperl v. Standard Distilling Co., 119 S. W., 1169; Edwards v. Anderson, 31 Texas Civ. App., 131.

JAMES, CHIEF JUSTICE.—Floyd McGown, as receiver for J. M. Chittim, having levied an execution on the land in controversy, Robert Driscoll filed a petition for injunction, restraining the enforcement of the writ, against Rogers, sheriff of Duval County, and said receiver.

Driscoll's petition averred that he was owner of the land, etc. Pending the injunction suit Driscoll sold the land to C. M. Robinson, who was made a party defendant.

Defendants, the sheriff and McGown, receiver, set up that the transfer of the land from Parr to Driscoll was made with intent to delay and hinder the creditors of Parr; that Driscoll purchased with knowledge of such intent, and that Robinson, in turn, purchased pending the suit with knowledge of such intent, and prayed that the injunction be dissolved and the land sold and the proceeds thereof applied to the payment of the receiver's judgment against Parr.

The court submitted the case upon special issues, and, upon the findings, judgment was entered for appellees.

Under the fourteenth and second and third assignments of error appellants frame and brief the following propositions:

"As the undisputed evidence in the case showed that Parr whilst insolvent had conveyed all of his property to Robert Driscoll with the intent to hinder and delay his creditors, and that the legal effect of the transfer of his property was to delay and hinder his creditors, and that of all this Driscoll had knowledge or notice when he purchased, and notwithstanding paid Parr part of the consideration in cash without seeing to the application of the cash to the payment of any of the creditors of Parr, the conveyance to Driscoll was void

as to Parr's creditors, and the verdict of the jury is without any evidence to support it and contrary to the undisputed evidence in the case."

"As the undisputed evidence shows that the transfer from Parr to Driscoll was made to hinder and delay his creditors in the collection of their debts, and that the creditors were actually hindered and delayed in such collection by said transfer, and that said Robert Driscoll had knowledge or notice of the purpose of said transfer or the necessary legal effect thereof, and did not see to the application of the cash paid by him to the payment of Parr's debts, it was error in the court to submit to the jury for decision such undisputed facts, and that the court should have charged the jury that said facts were shown by the evidence. The submission of the facts for determination by the jury was in effect an expression by the court that the facts were disputed, and the submission, which was in the nature of a charge to the jury, was, therefore, on the weight of the evidence."

These propositions require consideration of the evidence.

The first material issue in the case is whether or not Parr made this sale to Driscoll with intent to delay or hinder his creditors. The court submitted this issue and the finding was in the negative. If there was evidence supporting this finding, it seems to us that it put an end to the case, and the other submissions were of matters of no significance, unless the findings thereon happened to be contradictory of the above, which they were not.

The third question submitted was: "Was the transfer by Archie Parr to plaintiff Driscoll of the land in controversy herein made with intent on the part of said Parr to delay or hinder creditors?" The answer was, "No." The generality of this question constitutes no objection to the finding where a no more specific instruction was requested.

The finding in answer to the first question, that Parr used the cash payment of $5000 made him by Driscoll, or substantially all of it, in the payment of preexisting debts of said Parr, was not a finding inconsistent with the answer to question 3, even when taken to mean that he did not so apply all of the cash.

The finding in answer to question 2, which was that the price at which the land in controversy was sold to Driscoll was the reasonable fair market value of the same at the time, was consistent with it; and the findings in answer to questions 4, 5 and 6, which were in substance that Driscoll did not have actual knowledge of an intent on the part of Parr to delay or hinder creditors, if any, nor knowledge of facts and circumstances sufficient to put him on notice of such intent, were rendered wholly unimportant by the answer to question 3, because it is evident that if no such intent of Parr existed, it would follow of necessity that Driscoll did not know of it, nor was put upon notice of it.

Therefore, we shall examine the condition of the evidence as to its supporting the finding under question 3, and the conclusion we reach is that the finding was contrary to the evidence. Parr owned this land and some stock upon it which he sold to Driscoll on November 14, 1905, in consideration of the latter's assumption of a

mortgage thereon to Mrs. Collins amounting to $20,430 principal and $6,129 interest, and of $5000 cash. On November 17, 1905, Parr conveyed to Edds & Thompson all his cattle excepting one cow, calf and heifer known as his milk cow in the town of San Diego, from which sale he, Parr, satisfied a mortgage debt on them due to Driscoll of $10,000, and received about fifty-five hundred dollars in cash from Edds & Thompson. It appears clearly from both Parr and Driscoll's testimony that the latter knew this cattle sale had been agreed on at the time Driscoll bought the land in question, although the transfer to Edds & Thompson was of date three days later. By the above conveyances he disposed of practically all the property he owned.

The evidence shows that he received the $5000 from Driscoll and applied the larger part of it, though not all, to the payment of certain then existing creditors, keeping the money in his personal possession and making such application of it from time to time during the next several months as he saw fit, but using some of it for other purposes. He was at the time of the sale to Driscoll in failing circumstances, in fact insolvent. He had creditors in the section where he lived, owing them about $6000. Besides this, he owed J. M. Chittim on their mutual partnership affairs and there was a suit pending against him in Bexar County brought by Chittim's receiver, which in course of time resulted in a judgment against him for about $60,000, being the judgment upon which the execution in question was levied.

There is testimony that shortly before the deal with Driscoll he formed the idea of selling his property for the purpose of paying his mortgage debts and to obtain cash to use in settling debts.

Parr testified: "When I went to see Judge Welch before going to see Mr. Driscoll I said, 'Judge, these people up here are lawing me and I have no papers and no books or anything and they are liable to get a judgment against me and if they do they will sell my property and take everything I have got away from me, and I owe my neighbors around here who have been crediting me for years,' and I told him that I owed debts running anywhere from $10 to $2000, and he told me, 'Go and sell your property, and after you have sold it, pay all your debts and if you have anything left, offer it to these people to settle the business with them.' Told me to go and sell my property and go and pay my debts, and then go and offer the balance to these people on this Chittim indebtedness. . . . I proposed at that time that my home people should be paid first. . . . It is exactly true that I converted all of my property into cash and that I had the cash in my possession and that it was dependent upon my purpose as to whether these creditors got their money or not." Again Parr testified: "Before going to see Driscoll I went to see Judge Stanley Welch. I didn't tell Judge Welch that my creditors were about to hop on me and that I wanted to do something with my property, because I did not have any creditors that were about to hop on me. I made the sale of the property because I was afraid that my friend Mr. McGown would get a judgment against me and take all that I had and leave these people around

here without anything. I did not make the sale exactly for the purpose of keeping Mr. McGown from collecting that judgment. I made the sale to pay my honest debts around here."

The result of his interview with Judge Welch was that he went to see Driscoll at the latter's ranch. He testified: "I went to Mr. Driscoll's ranch and I says, 'Mr. Driscoll, I owe a lot of debts around here and I would like to pay them, I says. I have sold my cattle and I have got a mortgage on the place to Mrs. Collins and the interest will be due some time next year, and as I have no means of paying the interest I would like to sell the property, and I says I want to pay up all my debts and square up.' 'Well,' he says, 'What will you take for it?' I said, 'You pay the mortgage off and give me $5000 cash and I will sell it to you.' He asked how much the mortgage was. 'I says, I think about $20,400,' He says, 'How long does the mortgage run?' and I says, 'I put it on for five years.' He says, 'I can take the mortgage up at any time I want to?' and I says, 'Yes, if you will wait until the year expires;' that it was fixed so that it could be taken up at any time at the end of the year, but if he did not wait until the end of the year, he would have to pay interest for the year anyhow. He says, 'What rate of interest?' I says, 'Six percent.' He says, 'Well, all right; you tell Judge Welch to look after the papers and examine, and if everything is all right, for him to make out the deed, you have it recorded, and then bring it to me and I will give you the money;' and I then went to Judge Welch and told him what Mr. Driscoll had said and Judge Welch fixed up the papers and gave me the deed. I then had it recorded and took it to Mr. Driscoll and he gave me the money."

We may add, as a result of the testimony of both Parr and Driscoll, that the above was substantially the transaction as it occurred.

Upon the testimony given by Parr we meet difficulty in sustaining the finding of the jury in answer to question No. 3. Had there been the single transaction of the sale to Driscoll we would be able to say, without hesitation, that there was evidence that he had at the time the intent of getting the $5000 cash from Driscoll for the purpose of applying the same to prefer and pay his local debts, which according to all the testimony amounted to more than that sum. Such purpose would be a legitimate one, and not fraudulent, in the sense of the statute, although thereby other creditors were intentionally delayed, hindered or even defeated. That an insolvent debtor has the legal right to pay certain of his creditors in full and leave others unpaid, and the legal right to sell property with such intent and purpose, is too well settled to require discussion. And if the finding No. 3 could be sustained upon the evidence, it would end the case, because it is clear that if the sale was not made with intent to defraud, delay or hinder creditors in the meaning of the statute, there would be nothing to affect the title of the purchaser.

But Parr's testimony shows that when he made the sale to Driscoll, he was also in the act of selling his cattle to Edds & Thompson, and was in the act of getting from such sale an additional sum of cash amounting to between five and six thousand dollars. His intent, as it appears from his own testimony, was to dispose of all his prop-

erty for enough to pay his local creditors and leave him four thousand dollars surplus, which he did not intend to pay over unconditionally to McGown. In this connection he states that it did not take the whole of the ten thousand dollars to "pay off my creditors" (meaning his local creditors). "It took about six thousand dollars to pay off my creditors, and I offered Mr. McGown the other four thousand dollars. I offered him four thousand dollars to pay a fifty-one thousand dollar indebtedness." . . . "If a man owes me a ten thousand dollar debt and offered me fifty cents to settle the debt, why I would take it in settlement if I knew I was not going to get any more. I know that Mr. McGown is not going to get any more. I am going to beat him just as long as I am here, that is what I am here for, and if I don't beat him in this suit I am going to take the bankruptcy law. When I made the sale to Driscoll I intended to pay all my creditors off that I owed and then give the balance to Mr. McGown if he would settle the judgment."

It is, therefore, clear from his testimony that at the time of the disposition of all his property, inclusive of the sale to Driscoll, his purpose was to hinder, delay and, to a large extent, defeat the creditor McGown. The finding No. 3 not being sustainable, the question is squarely before us whether the other findings upon which the judgment may rest, were supported by the testimony.

Driscoll testified that on November 14, 1905, he knew nothing about Parr's financial condition and made no inquiries as to it. That Parr was indebted to him at the time for $10,000 secured by a chattel mortgage on his cattle. That he had the land in controversy, but he knew nothing about his other property. That he had heard of the Chittim suit against Parr in Bexar County. "I didn't know at the time I bought that property from Parr that he was indebted to Chittim. I knew that they were to have a settlement of some kind, but I didn't know which was indebted to the other. . . . I did know there was a difference on account between them, but I didn't know how it stood. I didn't know the amount that Chittim was at that time claiming that Parr owed him, and Parr at that time never said that he was indebted to Chittim. . . . I didn't make any inquiry of Chittim as to the extent of his claim against Parr. . . . When I bought from Parr, I didn't make any inquiry from him as to what property he owned besides what he was selling to me and never made any inquiry about it. . . . I bought Parr's land. He came down and wanted to sell his land. He said he was in debt and wanted to get out of debt and sell his land. . . . Parr told me he wanted the money for the purpose of paying some of his debts. He said he was indebted in a considerable amount. . . . He wanted about five or six thousand dollars in money—that he owed some debts that he wanted to pay. I never asked him what they were, or how much he owed, or did not owe. . . . I got Judge Welch to examine the title and make an examination of the records and see if the records were clear. . . . I had advice from Judge Welch that the title was clear before I paid the money subject to the Collins mortgage, and I paid that, that was recited in the deed. . . . I knew nothing outside of what he told me. . . .

If I had inquired of Mr. Parr as to whether he had other property, I knew him well enough to know that he would have told me—the money I paid him was enough to cover everything he told me. If I had asked him the question, I could have found out whether he had any other property. I didn't do that. I never asked Mr. Parr for a list of his indebtedness and he never told me who his creditors were; he told me about the mortgage and that he owed five or six thousand dollars on the outside."

There is no evidence that Driscoll knew of the aforesaid intent on the part of Parr to reduce his property to money for the purpose of paying off his local creditors with part of it and to withhold the remainder from McGown, or to use it to dictate terms of settlement to McGown. The jury had the right to believe both Driscoll and Parr, or what either of them testified to, and that from their testimony the latter did not make known or refer to anything that suggested to the former that he had such a purpose in view. The jury may have attached weight to Driscoll's statement: "I knew him (Parr) well enough to know that he would have told me," etc., as showing Driscoll's confidence in Parr's truthfulness, so that when Parr told him he wanted the money to pay all his debts and square up, he, Driscoll, had just reason to believe, without further inquiry, that that was Parr's real purpose. The rights and duties of Driscoll must be looked at from his standpoint, and if the jury believed, as they may have done, that if he had confidence in the statements of Parr, as he seemed to have, he was not, in the exercise of due care and good faith, required to take notice of a contrary purpose. It was consistent with Driscoll's testimony that he did not know that Parr was insolvent.

The testimony was sufficient, in our opinion, to sustain the answer to the 4th question, which was, that at the time of the transfer to Driscoll, he did not have actual knowledge of the intent of Parr to thereby delay or hinder his creditors.

Also sufficient to sustain the answer to the 5th question, in effect that Driscoll did not have knowledge of facts and circumstances sufficient to cause an honest man of ordinary prudence to make inquiry as to whether or not the transfer was made with such intent on the part of Parr.

The finding of the jury in answer to question 2, was that the price at which the land was sold to Driscoll was its reasonable, fair market value, at the time. The evidence amply supports this finding.

These findings authorized the judgment rendered.

Enough has been said to make it proper to overrule the assignments of error from four to nine, likewise numbers eleven and thirteen and one-half, and also the propositions under the fifteenth and twelfth.

The sixteenth assignment complains of the giving of the said six special charges, and omitting to submit a question as to whether the conveyance from Parr to Driscoll was made upon a secret trust in each instance being for the benefit of Parr. Appellants set forth the evidence which they claim raises such issue, but no request appears to have been made to submit it.

Complaint is made by a proposition under the eighth assignment,

that the fifth question was erroneously worded. It read: "At the time of said transfer . . . did Driscoll have knowledge of facts and circumstances sufficient to cause an honest man of ordinary prudence to make inquiry as to whether or not said transfer was made with intent on the part of Parr to delay or hinder his creditors?" The word "honest," in that connection, is claimed to be error. We think not. See Dodd v. Gaines, 82 Texas, 429, for an expression of the rule in accordance with the wording of this instruction.

The tenth assignment is overruled. If the jury had found affirmatively, all the facts recited in the special question marked A, asked by appellant, it would have made no difference in the result, in view of the findings which we consider anthorized the judgment rendered.

The first assignment is that the court erred in overruling the motion of appellants to dissolve the temporary injunction. In view of the fact that the final judgment sought to be reviewed by this appeal perpetuates the injunction, we see no force in this assignment.

We overrule the seventeenth assignment which complains of the overruling of the motion for new trial.

The thirteenth assignment alleges that the court erred in overruling the general demurrer to plaintiff's petition. The demurrer was generally to the petition as showing no cause of action and no right to an injunction. The proposition is that the petition shows no grounds for interference by a court of equity in the sale of the property under the execution against Parr, because, if the property belonged to Driscoll, and not to Parr, a sale under the execution could not have passed Driscoll's title nor clouded same, and his remedy at law was adequate. The principle invoked is that declared in a number of cases, and fully explained in Mann v. Wallis, 75 Texas 613. The matter was raised by appellant too late to entitle him to insist on the application of the rule. His suit was instituted on April 2, 1906. The original answer is not in the record, and the first amended original answer filed May 26, 1909, contained this demurrer, and so far as we know, this was the first time the demurrer was pleaded. This amended pleading purports to amend defendant's original answer, "filed on the 30th day of April, 1908." The court overruled the demurrer on the day it was filed, May 26, 1909, as the case was going to trial.

The rule that equity will not interpose where the party applying has an adequate remedy at law, is not one which absolutely denies jurisdiction to the court of equity. It is a rule, we think, of convenience and propriety which the defendant or the court may avail itself of. It is certainly one which the defendant may waive, and we think the court was not in error in overruling this demurrer when, as it appears, it was not interposed until long after defendants had answered, and not until after the suit had been allowed to pend for three years, and when the case had been prepared for trial and about to proceed to trial. Rivers v. Campbell, 51 Texas Civ. App., 103 (111 S. W. 190). As the court did not see fit to decline to hear and determine the controversy, it was the privilege of defendants to invoke said rule or not, and a right of this kind must be seasonably asserted. It was not so asserted in this instance.

Before concluding, there is a contention made by appellants in the

argument which should receive attention. It is that Driscoll was charged with knowledge possessed by Judge Welch, his agent in consummating the purchase of this property, and that Welch knew Parr's intent. The testimony is ample to show that all Driscoll referred this matter to Welch for, was for him to pass upon the record title, and to draw the papers, and this, after Driscoll had made the trade with Parr. Under these circumstances, Driscoll could not be charged with any knowledge that Welch had acquired prior to and independently of that employment. The judgment is affirmed.

### ON MOTION FOR REHEARING.

It is insisted by this motion, among other things, that the record shows enough undisputably, to have put Driscoll upon inquiry as to Parr's actual condition. We think, that if Driscoll's statements be accepted as true, it can not be declared, as a matter of law, that he was informed of facts which would have prompted an ordinarily prudent person to take a different course than that which he pursued. It was, in our opinion, a question for the jury, and they had the right to act upon Driscoll's testimony, exclusively, if they saw proper.

Nor was the relation between Driscoll and Welch, as shown by the evidence, conclusively such as would make the latter's knowledge the knowledge of Driscoll.

It is also insisted that when this court determined that the finding of the jury in answer to question 3, that Parr had not transferred his property to hinder and delay his creditors, was against the evidence, the cause should have been remanded, notwithstanding the further finding of the jury in answer to the fifth question that Driscoll did not have knowledge of facts and circumstances sufficient to cause an honest man of ordinary prudence to make inquiry as to whether or not said transfer was made with intent on the part of Parr to delay or hinder his creditors. Appellant says that the jury having found that there was no such intent on the part of Parr, they could not have answered the fifth question affirmatively.

The question No. 5 was propounded without any connection with No. 3 and as an independent issue. It was an independent question in fact, one affecting Driscoll's conduct, and one which Driscoll had a right to have submitted and determined as it involved a complete defense for him regardless of any other issue. In reality the question called for a finding from the evidence relative to the facts and circumstances known to Driscoll at the time, as to whether or not it was sufficient, in any event, to put an honest man of ordinary prudence upon inquiry into Parr's intent. The jury should be presumed to have possessed sufficient intelligence to understand that their answer was to be made without regard to what their finding was as to Parr's conduct. The finding is not inconsistent with any other finding. The answer determined the question. Motion overruled.

*Affirmed.*

Writ of error refused.