Maureen BLACKTHORNE, Sheinfeld, Maley & Kay, P.C., Appellants,

v.

James J. BELLUSH, Individually and as Personal Representative of the Estate of Sheila L. Bellush, a/k/a Sheila Leigh Blackthorne, Deceased, and as Next Friend of Stevie Leigh Belush, and the quadruplets Frankie, Timothy, Joseph & Courtney Bellush, Minors, Kerry Bladorn as Next Friend of Daryl Leigh Bellush, and Verma Gene Smith, Appellees.

No. 04–01–00216–CV.

Court of Appeals of Texas, San Antonio.

July 5, 2001.

Rehearing Overruled Oct. 10, 2001.

David L. Botsford, John W. Chambless, II, Stephen W. Lemmon, Sheinfeld, Maley & Kay, P.C., Austin, for appellant.

Maureen Blackthorne, Pro Se.

J. Ken Nunley, Kelly Putney Rogers, Nunley, Davis, Jolley & Hill, L.L.P., Boerne, for appellees.

Sitting: PHIL HARDBERGER, Chief Justice, ALMA L. LÓPEZ, Justice, and KAREN ANGELINI, Justice.

ALMA L. LÓPEZ, Justice.

In this accelerated, interlocutory appeal, Maureen Blackthorne ("Maureen") and the law firm of Sheinfeld, Maley & Kay, P.C. ("SMK") appeal the trial court's order granting a temporary injunction, enjoining Maureen from disposing of the International Rehabilitative Sciences stock (the "Stock") that was transferred to her by her husband, Allen Blackthorne ("Allen"). SMK has a lien against the Stock.

## PROCEDURAL BACKGROUND

Sheila Bellush was murdered on November 7, 1997. Her survivors filed the underlying wrongful death action against her ex-husband, Allen Blackthorne, his wife Maureen, and several others on November 6, 1998. On January 11, 2001, appellees filed their eighth amended original petition, adding a cause of action under the Texas Uniform Fraudulent Transfer Act ("TUFTA"), and seeking injunctive relief

based in part on allegations that, twelve days after the murder, Allen had transferred his separate property interest in the Stock to Maureen. On February 15, 2001, SMK intervened in the lawsuit as lienholders on the Stock and stock proceeds.

At the conclusion of an evidentiary hearing on the motion for a temporary injunction the trial court temporarily enjoined Maureen from transferring, encumbering, or disposing of the Stock until judgment in the underlying tort action was reached. The court imposed a $10,000 bond and also entered findings of fact and conclusions of law.

Maureen and SMK filed this interlocutory[1] appeal seeking dissolution of the injunction. Appellants failed to preserve their second issue concerning constitutional infringement when the court enjoined assets earmarked to fund Allen's criminal post-trial defense proceedings. *See Miller Paper Co. v. Roberts Paper Co.*, 901 S.W.2d 593, 600 (Tex.App.—Amarillo 1995, no writ) (constitutional challenge to preliminary injunction against uttering false statements waived because not specifically presented to trial court). We, therefore, address the remaining issues.

## STANDARD OF REVIEW

A temporary injunction will issue on proof of a probable right on final trial to the relief sought, probable injury in the interim, and no adequate remedy at law. *See Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex.1993). The trial court has broad discretion to grant or deny temporary injunctions. At a temporary injunction hearing, the only issue before the trial court is whether the status quo should be preserved pending trial on the merits. *Camp*

1. A party may appeal from a district court's interlocutory order granting a temporary injunction or overruling a motion to dissolve a temporary injunction. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(4) (Vernon Supp. 2001).

*v. Shannon,* 162 Tex. 515, 348 S.W.2d 517, 519 (1961); *Ramsey v. Lewis,* 874 S.W.2d 320, 322 (Tex.App.—El Paso 1994, no writ). The only issue on appeal is whether the trial court clearly abused its discretion in resolving that issue by granting or denying the temporary injunction. *City of San Antonio v. Rankin,* 905 S.W.2d 427, 430 (Tex.App.—San Antonio 1995, no writ); *Ramsey v. Lewis,* 874 S.W.2d at 323. The trial court abuses its discretion when it misapplies the law to the "established facts or when the evidence does not reasonably support the conclusion that the applicant has a probable right of recovery." *State v. Southwestern Bell Tel. Co.,* 526 S.W.2d 526, 528 (Tex.1975); *City of San Antonio v. Rankin,* 905 S.W.2d at 430. All legitimate inferences from the evidence are drawn in favor of the trial court's judgment, and the trial court does not abuse its discretion where the evidence "tends to sustain the cause of action as alleged." *Id.; Munson v. Milton,* 948 S.W.2d 813, 815 (Tex.App.—San Antonio 1997, writ denied).

### PROBABLE RIGHT OF RECOVERY

Appellants' first issue asserts there is insufficient evidence to show a probable right of recovery on their underlying tort claims. They point to the fact that the evidence presented at the injunction hearing never covered the essential elements of each of seven separate causes of action. Without such proof, they assert, appellees had no basis for seeking an injunction against the transferred assets.

■ The Texas Uniform Fraudulent Transfer Act (TUFTA) creates the statutory cause of action through which a creditor may seek recourse for a fraudulent transfer. *See Jackson Law Office, P.C. v. Chappell,* 37 S.W.3d 15, 25 (Tex.App.—Tyler 2000, pet. denied); *Connell v. Connell,* 889 S.W.2d 534 (Tex.App.—San Anto-

nio 1994, writ denied) (act designed to prevent transfers of property made with intent to defraud creditors). Appellees assert their right to injunctive relief under two provisions of TUFTA. Under Section 24.005 of the Act:

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) with actual intent to hinder, delay or defraud any creditor of the debtor; or

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

TEX. BUS. & COM.CODE ANN. § 24.005 (Vernon Supp.2001). In addition, Section 24.006 provides:

A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

*Id.* at § 24.006(b) (Vernon 1987).

■ Tort claimants, such as the appellees, are entitled to file causes of action under TUFTA based upon pending, unliq-

uidated tort claims. *See* Tex. Bus. & Com. Code Ann. § 24.002(3), (4) (Vernon Supp. 2001); *Hollins v. Rapid Transit Lines, Inc.*, 440 S.W.2d 57, 59 (Tex.1969). And interim injunctive relief is an available remedy to a fraudulent transfer for which the claimant asserts an equitable interest. *See* Tex. Bus. & Com.Code Ann. § 24.008(a)(3)(A) (Vernon 1989); *accord United States ex rel. Rahman v. Oncology Assoc., P.C.*, 198 F.3d 489, 498 (4th Cir. 1999)(tort creditors have equitable interest in assets fraudulently transferred).

▮▮▮ An applicant requesting a temporary injunction is not required to establish that he will prevail at trial. *See Walling v. Metcalfe*, 863 S.W.2d at 58. The applicant's burden is to establish a probable right of recovery following a trial on the merits and a probable injury in the interim, warranting preservation of the status quo pending the trial. *See id.* at 57. To establish a probable right to recovery, the appellees must have a cause of action for which they may be granted relief. *See id.* at 58; *Universal Health Services, Inc. v. Thompson*, 24 S.W.3d 570, 577 (Tex.App.— Austin 2000, no pet.); *Surko Enter., Inc. v. Borg–Warner Acceptance Corp.*, 782 S.W.2d 223, 225 (Tex.App.—Houston [1st Dist.] 1989, no writ) (probable right to recovery includes allegation of wrongful conduct).

▮▮▮ The evidence is sufficient to support the trial court's findings of a probable right to recovery. *See* Tex. Bus. & Com. Code Ann. § 24.005 (Vernon Supp.2001). Actual intent to defraud was shown circumstantially: Maureen, the transferee, is an insider, *see id.* at § (b)(1); Allen, the transferor or debtor, remained in control after the transfer, *id.* at § (b)(2); the transfer involved substantially all of Allen's assets, *id.* at § (b)(5); Allen had concealed assets from the deceased during the divorce, *id.* at § (b)(7); Maureen did not give reasonably equivalent value for the assets transferred, *id.* at § (b)(8); and Allen became insolvent shortly after the transfer, *id.* at § (b)(9). Furthermore, SMK took a lienholder's interest in Stock valued at .$2,600,000 less than two weeks after appellees filed their TUFTA claim in the pending lawsuit, *id.* at § (b)(4), which is far in excess of the $750,000 in legal costs for Allen's criminal appeal, potential habeas corpus proceedings, and a potential retrial which SMK estimated shortly before the TUFTA claim was filed, *id.* at § (a)(2)(B).

## PROBABLE INJURY

▮▮▮ Appellants fault the findings and conclusions supporting the injunction because plaintiffs presented no evidence of probable damages in connection with their wrongful death claims, and thus, failed to show they may suffer a legal injury if the transfer is not enjoined. Probable injury includes elements of imminent harm, irreparable injury, and no adequate remedy at law for damages. *See Inex Indus., Inc. v. Alpar Resources, Inc.*, 717 S.W.2d 685, 687–88 (Tex.App.—Amarillo 1986, no writ). An existing remedy is adequate if it "is as complete and as practical and efficient to the ends of justice and its prompt administration as is equitable relief." *Ballenger v. Ballenger*, 694 S.W.2d 72, 76 (Tex.App.— Corpus Christi 1985, no writ). A plaintiff does not have an adequate remedy at law if the defendant is insolvent. *See id.; Surko Enterprises, Inc. v. Borg–Warner Acceptance Corp.*, 782 S.W.2d 223, 225 (Tex. App.—Houston [1st Dist.] 1989, no pet.). If the Blackthornes are permitted to transfer the Stock unimpeded by this proceeding, it appears that they become judgment proof. Ironically, appellants rely on a colorful old case which affirmed a jury finding in favor of Archie Parr's [sic] sale of Duval County real estate to Robert Driscoll

which had permitted Parr to pay off creditors of his own choosing, while leaving others with nothing. *See Rogers v. Driscoll,* 59 Tex.Civ.App. 415, 125 S.W. 599, 601 (San Antonio 1910, writ ref'd). Of course, we are not dealing with the merits at this stage. And while appellants take the position that the Blackthornes should be free to choose the creditors they wish to pay with their remaining assets, the trial court was free to judge the credibility of the testimony concerning those intentions.

### PRESERVING THE STATUS QUO

 Appellants correctly state that the purpose of a temporary injunction is to preserve the status quo pending a trial on the merits. *Davis v. Huey,* 571 S.W.2d 859, 862 (Tex.1978). The status quo is defined as the last, actual, peaceable, non-contested status that preceded the controversy. *State v. Southwestern Bell Tel. Co.,* 526 S.W.2d 526, 528 (Tex.1975). It is in the application of this definition to the controversy where the parties usually disagree. Each side typically argues that the status quo lies with their own possession of the right or property in question.

Appellants assert that the status quo would put Maureen and SMK in a position to be free to dispose of the Stock, where they were immediately prior to the injunction hearing. However, the last peaceable, non-contested status would be at least prior to the filing of the eighth amended petition and its TUFTA claim on the Stock. Arguably, the status quo goes back to the date the claim for damages first arose, the death of Sheila Bellush, and prior to the initial transfer of the Stock from Allen to Maureen shortly thereafter. Nevertheless, we find that the trial court did not abuse its discretion in concluding as a matter of law that the injunction was necessary to maintain the status quo pending a final determination on the merits of the fraudulent transfer claims.

### OVERBREADTH

 Appellants argue that the temporary injunction goes too far and restrains the rights and lawful activities of Maureen, her family, and SMK. They claim that Maureen is now prevented from supporting her family, paying taxes, medical care, and legal fees, including her obligations under the fee-and-security agreement with SMK. The trial court, however, offered to modify the injunction upon a proper showing of Maureen's immediate financial needs. Appellants chose to appeal the injunction rather than to work with the court and appellees to craft a more narrow injunction. We find no abuse of discretion in the trial court's decision.

### SMK's LIEN ON THE ENJOINED STOCK

 Appellants claim that the trial court misapplied the law by enjoining the transfer of assets which were encumbered with a valid lien in favor of SMK. Appellants are correct that TUFTA excludes the application of injunctive relief against an asset subject to a valid lien. *See* TEX. BUS. & COM.CODE ANN. § 24.002(2)(A). A "valid lien" is one that is effective against the holder of a judicial lien subsequently obtained by legal or equitable process or proceedings. *Id.* at (13). If appellees are successful on the merits they will then hold a judicial lien on the Stock. Thus, the SMK lien is not a valid lien in the sense that it is excluded from a TUFTA remedy.

In addition, the trial court received evidence of the fee agreements between SMK and its clients, and heard testimony from Maureen and SMK lawyers. Based on the totality of the circumstances involving the timing of the agreements and transfers, the court found that the million dollar increase in their retainer came "ostensibly at the request of Allen and/or Marueen Blackthorne." The court also found that SMK "took possession of the stock certifi-

cates with full knowledge, on both Maureen's and the law firm's part, of Plaintiffs' pending tort claims, including the claim under the Fraudulent Transfer Act relating to the stock" and concluded that SMK "did not take their alleged lien on the stock in good faith or for reasonably equivalent value." The trial court heard conflicting evidence on this transfer and is the sole finder of fact on this issue. We find no abuse of discretion.

### THE BOND

Appellants complain that the trial court acted arbitrarily in setting the injunction bond amount at $10,000.00. A trial court has considerable discretion in setting the amount of bond for a temporary injunction. *El Paso Development Co. v. Berryman,* 729 S.W.2d 883, 888 (Tex. App.—Corpus Christi 1987, no writ). The evidence here is conflicting on the potential damages to be suffered by appellants in the event the fraudulent transfer claim is not sustained on its merits. Maureen testified that she had entertained an offer to sell the Stock for $3.75 million, but that all offers had been withdrawn once the fraudulent transfer claim was filed by appellees. Moreover, the Stock is issued in a close corporation, not publicly traded, and will have few interested buyers. Under the circumstance, there is nothing in the record to show that the bond is clearly insufficient or that the court acted arbitrarily in setting the bond amount. *See Biodynamics, Inc. v. Guest,* 817 S.W.2d 128, 131(Tex.App.—Houston [14th Dist.] 1991, writ dism'd by agr.).

Appellants' issues are overruled, and the order enjoining the Stock is affirmed.

KAREN ANGELINI, J., concurs in judgment only.