02-10-294-CV















 

 

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

 

NO. 02-10-00294-CV


 

 


 
 
 Keith Fischer; Helen Lorraine Fischer; AND KHBD, Inc. d/b/a
 Precision Builders and d/b/a Precision Concrete
 
 
  
 
 
 APPELLANTS
 
 
 
 
  
 V.
  
 
 
 
 
 Mark Rider
 
 
  
 
 
 APPELLEE 
 
 


 

 

----------

 

FROM THE 367th District Court OF Denton COUNTY

----------

 

MEMORANDUM OPINION[1]

----------

 

I. 
Introduction

            This is an accelerated interlocutory appeal from a temporary
injunction.  See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4) (Vernon 2008).  In three issues, Appellants Keith Fischer,
Helen Lorraine Fischer, and KHBD, Inc. d/b/a Precision Builders and d/b/a
Precision Concrete argue that the trial court’s temporary injunction is void
because it failed to include a date for the trial on the merits and that the
trial court abused its discretion by finding evidence existed that Appellee
Mark Rider would suffer irreparable injury in the absence of a temporary
injunction and by finding evidence existed that such injury to Rider was imminent.
 We will affirm.

II.  Amended Temporary Injunction Sets
Trial Date

          After
Appellants perfected this appeal, the trial court signed an amended temporary
injunction.  The amended temporary
injunction is essentially the same as the original injunction except that it
sets a trial date.  Appellants concede in
their reply brief on appeal that their first issue, claiming that the temporary
injunction is void for failure to set a trial date, has been mooted by the
trial court’s amended temporary injunction that sets a trial date.  Accordingly, we overrule Appellants’ first
issue.[2]

III.  Trial Court Did Not Abuse its
Discretion

By Granting a Temporary
Injunction

 

A.  
 Standard of Review

A temporary injunction’s purpose is
to preserve the status quo of the litigation’s subject matter pending a trial
on the merits.  Butnaru v. Ford Motor Co., 84 S.W.3d 198, 204 (Tex. 2002) (citing Walling v. Metcalfe, 863 S.W.2d 56, 57
(Tex. 1993)).  A temporary injunction is
an extraordinary remedy and does not issue as a matter of right.  Id.

To be entitled to a temporary
injunction, the applicant must plead a cause of action and further show both a
probable right to recover on that cause of action and a probable, imminent, and
irreparable injury in the interim.  Butnaru, 84 S.W.3d at 204; Frequent Flyer Depot, Inc. v. Am. Airlines,
Inc., 281 S.W.3d 215, 220 (Tex. App.––Fort Worth 2009, pet. denied), cert. denied, 120 S. Ct. 2061
(2010).  A probable right of recovery is
shown by alleging a cause of action and presenting evidence tending to sustain
it.  Frequent
Flyer Depot, 281 S.W.3d at 220.  An injury is irreparable if damages would not
adequately compensate the injured party or if they cannot be measured by any
certain pecuniary standard.  Butnaru, 84 S.W.3d at
204; Frequent Flyer Depot, 281
S.W.3d at 220.

In an appeal from an order granting
or denying a temporary injunction, the scope of review is restricted to the
validity of the order granting or denying relief.  Walling, 863 S.W.2d at 58; Frequent
Flyer Depot, 281 S.W.3d at 220. 
Whether to grant or deny a request for a temporary injunction is within
the trial court’s discretion, and we will not reverse its decision absent an
abuse of discretion.  Butnaru, 84 S.W.3d at
204; Frequent Flyer Depot, 281
S.W.3d at 220.  Accordingly, when
reviewing such a decision, we must view the evidence in the light most
favorable to the trial court’s order, indulging every reasonable inference in
its favor, and determine whether the order was so arbitrary that it exceeds the
bounds of reasonable discretion.  Frequent Flyer Depot, 281
S.W.3d at 220.  A trial court does
not abuse its discretion if it bases its decision on conflicting evidence and
at least some evidence in the record reasonably supports the trial court’s
decision.  Davis v. Huey, 571 S.W.2d 859, 862 (Tex.
1978); Frequent Flyer Depot, 281
S.W.3d at 220.  When findings of
fact are not requested or separately filed we must uphold the trial court’s
order on any legal theory supported by the record.  Frequent
Flyer Depot, 281 S.W.3d at 220.

B.    The Temporary Injunction Hearings

KHBD is a close corporation that
builds million-dollar homes.  Michael
Cannaday is the builder and construction manager for KHBD, and Keith Fischer
and Rider own all of the KHBD stock.  Keith
owns 75% of the stock; Rider owns 25% of the stock.  Keith serves as the president, vice
president, secretary, treasurer, and the only director of KHBD.

Rider filed suit alleging that Keith
and Cannaday had fraudulently induced him (Rider) to finance “millions of
dollars of residential construction for KHBD . . . through the fraudulent sale
of stock and other devices” and then “refused to make payments to [him] in
accordance [with] the terms of the transactions . . . .” Rider alleged causes
of action for statutory fraud, common law fraud, fraud by nondisclosure,
securities fraud, fraudulent inducement, breach of fiduciary duty, constructive
fraud, aiding and abetting, violation of the Texas Close Corporation Act,
breach of contract, theft, money had and received,
negligent misrepresentation, and conspiracy.  Rider also requested the imposition of a
constructive trust/equitable lien; an order for equitable accounting; exemplary
damages; the appointment of a receiver, provisional director, and/or custodian;
and a temporary restraining order and injunctive relief. 

Rider’s temporary injunction hearing
was heard at three different hearings. 
Keith, Rider, Cannaday, and Lanny Wilkinson testified concerning the
temporary injunction.[3]  The trial court did not make findings of fact
or conclusions of law.  After the
hearings, the trial court entered a temporary injunction finding that there was
evidence “that harm is imminent to plaintiff, and if the court does not issue a
temporary injunction plaintiff will be irreparably injured.”  The trial court also found that “KHBD has made
balloon loans in 2009, with no interim interest payments required until
maturity, to Keith Fischer in the approximate amount of $83,939.02 and Michael
Cannaday in the approximate amount of $93,253.47” and that “[t]he court has
significant concerns at this juncture about the propriety of loans already made
by KHBD to Keith Fischer and Michael Cannaday and
future loans.”

Viewing the evidence as we must in
the light most favorable to the trial court’s ruling,
the record reflects that Keith and Rider had an oral agreement that Cannaday
would be paid $10,000 per month and that Rider would be paid sixty-six percent
of what Cannaday was paid.  For several
years, KHBD paid Cannaday his monthly salary plus other expenses, but Rider was
told by Keith that KHBD did not have money to pay him.

Yet, KHBD had loaned Keith approximately
$70,000 in 2009 in lieu of paying him for negotiating contracts and deals with
banks, for looking over bills, and for making sure that products were properly
delivered.  Keith said that KHBD paid for
his vehicle in 2006 and that he had received checks for rent because KHBD
offices out of his home.  According to
Keith, KHBD still owes him $620,103.84 of the monies he initially invested in
KHBD.[4]

Keith said that Cannaday has been
paid $483,707 since 2006, plus $13,818 for out-of-pocket expenses.  Keith said that he told Rider about the loan
that KHBD was making to Cannaday so that he could finish his home.  Keith said that he never told anyone that Cannaday had taken kickbacks.

Keith testified that Rider was
supposed to receive approximately sixty-six percent of
what Cannaday was paid, “assuming the profits were there.”[5]  However, Keith said that Rider has not been
paid sixty-six percent of Cannaday’s compensation since 2005 because the
corporation’s profits “aren’t there.”  Keith
testified that KHBD performed $77,881.02 worth of work on Rider’s home because
that is how Rider wanted to be compensated for his stock.  Additionally, KHBD had paid $78,165.48 of
credit charges for Rider and had made additional payments to him in the amount
of $85,455.99.  Keith testified that
Rider has been paid $263,566.93 plus $3,100 for his stock and that Rider still
has his stock.

Currently, Rider owns 2,500 shares of
KHBD, and Keith owns 7,500 shares of KHBD.  Keith testified that when shares of KHBD were
transferred among him, his wife, and Cannaday, they were transferred at one cent
per share; he admitted that Rider had paid $300 per share for his KHBD stock.  Keith said that no dividends were ever issued
because there were “none to pay.”

Two days after a December 4, 2009
shareholders’ meeting, Keith received a fax from Rider requesting KHBD’s tax
returns, and KHBD’s bookkeeper sent a letter to Rider stating that they would
produce the documents in thirty days. However, as of the date of the hearing,
no date had been set for Rider to inspect the books.

Rider testified that he had paid $750,000
for stock in KHBD and had received approximately $280,000 back.  He was last paid in 2007.  He said that he has been requesting financial
information from KHBD since 2005 but had not received information from KHBD
until the information was subpoenaed.

Rider discussed several exhibits
showing loans made by KHBD to Cannaday and to Keith.  One exhibit showed that in 2009, KHBD had
made loans to Cannaday totaling $93,253.47 and to Keith totaling almost
$84,000.  All of the loans were unsecured
and had no timetable for repayment.  Rider testified that he does not believe that
Cannaday can repay his loans to KHBD because he owes the IRS over $400,000.

With the loans and monthly salary
(which totaled $139,500),[6] KHBD
paid Cannaday $232,753.47 in 2009.  From
2006 to 2009, Cannaday’s pay plus the cost of his vehicles totaled $531,000.  Rider testified that he should receive
two-thirds of that or $354,319 plus $138,818.68 for his two-thirds of
Cannaday’s pay prior to 2006.

Rider was concerned that KHBD was
“cooking the books” because Cannaday’s salary was underreported by
approximately $500,000, Moreover, Rider stated, “They’ve made loans to
themselves, substantially draining the company of all assets, without my
permission or my knowledge, which is a violation of [the] shareholders
agreement.”  Rider also testified that
Keith and Cannaday had transferred stock back and forth without Rider’s
permission and had done so for one cent per share.  Moreover, Rider testified that Keith had admitted
on December 4, 2009 that Cannaday had taken kickbacks totaling approximately
$400,000 and that he was no longer an owner of KHBD.

Rider summarized the
misrepresentations that were made to him: (1) Keith misrepresented Cannaday’s
salary for 2003, 2004, and 2005 on the reports that Rider received twice a
year; (2) Keith misrepresented that a shareholders’ agreement was in place and then
later denied that there was one in place;[7] (3)
Keith misrepresented that he owned the company and misrepresented that Cannaday
had ever owned the company; (4) Keith misrepresented in 2000 that KHBD was
doing honest work with integrity with its homeowners and subcontractors; (5)
Keith misrepresented that the stock was worth $300 per share and then traded it
for one cent per share; (6) Keith misrepresented that if Rider bought a lot in
Corinth that KHBD would make the interest payments until the lot sold, but then
Keith told Rider that he would not make the payments; (7) Keith misrepresented
that he would not pass stock to dodge federal bankruptcy rules; (8) Keith
misrepresented that KHBD would have an “S election,” but Keith failed to follow
through with making that election; (9) both Keith and Cannaday misrepresented
“a certain situation involving a crossing of boundaries and the building
of  . . . a personal home that was to
have happened in Corinth”; and (10) Keith and Cannaday made loans to themselves
without Rider’s permission.

Michael Cannaday, the builder[8] and
construction manager for KHBD, testified that KHBD pays him $10,000 per month
and that KHBD furnishes him with a cell phone and a truck that can pull heavy
equipment.  He testified that he has not
accepted any kickbacks and that he has not transferred stock to avoid tax
liabilities.  He said that he does not
currently own any KHBD stock and is not an officer or director.

He said that his relationship with
Rider deteriorated when he filed for divorce from Rider’s stepdaughter.  Cannaday testified that Rider knew that KHBD
was paying for the cost overruns on Cannaday’s home and that he intends to pay
back the $87,000 loan for those cost overruns.  Cannaday also testified that he has IRS liens
totaling $400,000.

Lanny Wilkinson, who owns multiple
companies, testified that Rider contacted him in late November about a problem
he was having with his KHBD shares.  Wilkinson told Rider that he had a right to
know what was going on with KHBD, and Rider invited him to come to the December
4, 2009 shareholders’ meeting.  When they
showed up for the shareholders’ meeting, Wilkinson used a proxy executed by
Rider and asked Keith for KHBD’s tax returns, financials, and construction
documents.  Wilkinson said that Keith
would not produce any documents at the meeting, but Keith told him that he knew
Cannaday had taken kickbacks and that was why Cannaday no longer had access to
the KHBD checkbook.  Keith also told
Wilkinson that he would “never testify to that in court.”

C.          
 Evidence
Supports Findings of Irreparable Injury

and Imminent
Harm

 

          In
their second and third issues respectively, Appellants argue that the trial
court abused its discretion by finding that in the absence of a temporary
injunction Rider would suffer irreparable injury and that such harm to Rider
was imminent.

          A
probable, imminent, and irreparable injury is the third element necessary to
obtain a temporary injunction.  Butnaru, 84 S.W.3d at 204;
Blackthorne v. Bellush, 61 S.W.3d
439, 444 (Tex. App.––San Antonio 2001, no pet.).  A party proves irreparable injury for
injunction purposes by proving that damages would not adequately compensate the
party or cannot be measured by any certain pecuniary standard.  Butnaru,
84 S.W.3d at 204; Frequent
Flyer Depot, 281 S.W.3d at 227.  An
injury is also irreparable if the plaintiff does not have an adequate remedy at
law, and a plaintiff does not have an adequate remedy at law if the defendant
is insolvent.  Blackthorne, 61 S.W.3d at 444.

          The
evidence presented at the temporary injunction hearings demonstrated that KHBD
was making unsecured loans to Keith and Cannaday while refusing to pay Rider
because there were allegedly no profits to pay him.  There was some evidence that KHBD’s tax
documents did not reflect payments to Keith and that payments to Keith were not
reflected on his bankruptcy petition.  There
was also some evidence that Cannaday may have accepted kickbacks.  Moreover, Keith, Helen, and Cannaday were
trading shares among one another for one cent, while Rider paid $300 per share
for his shares.  All of this evidence
regarding KHBD’s financial situation demonstrated that Rider was at risk of not
ever being repaid for his shares and that he could suffer irreparable injury,
as well as imminent harm, due to the inability to police Keith, who is the majority
shareholder, sole director, president, vice president, secretary, and treasurer
of KHBD.  The record clearly supports the
trial court’s “significant concerns” over the propriety of KHBD’s unsecured
loans to Keith and Cannaday, as well as the trial court’s concern that such
financial practices would continue in the future without a temporary injunction
in place.

Because there is at least some
evidence in the record reasonably supporting the trial court’s decision, we
hold that the trial court’s decision to grant a temporary injunction is not
arbitrary and did not exceed the bounds of its reasonable discretion because
that was the only way to deny Keith the ability to continue to withdraw funds
from KHBD to Rider’s detriment while the litigation is pending.  See
Butnaru, 84 S.W.3d at 211–12; Davis,
571 S.W.2d at 862; Frequent Flyer Depot,
281 S.W.3d at 228–29 (holding that airline presented evidence of irreparable
injury where it was difficult to police appellants’ actions and that airline
proved damages were not adequate to fully compensate it for its injuries); Blackthorne, 61 S.W.3d at 445 (holding
that trial court did not abuse its discretion by concluding as a matter of law
that the injunction was necessary to maintain the status quo pending a final
determination on the merits of the fraudulent transfer claims because the Blackthornes
would become judgment proof if they were permitted to transfer stock); see also ETEN, Inc. v. College of the
Mainland, No. 01-10-00349-CV, 2010 WL 4056859, at *5–6 (Tex. App.––Houston
[1st Dist.] Oct. 14, 2010, no pet.) (mem. op.) (holding that trial court did not abuse its
discretion by determining that there was some evidence that College of the
Mainland established it would suffer a probable injury––the continued diversion
and misuse of income and the unauthorized exploitation of its intellectual
property by defendants—without the entry of a temporary injunction); Twyman v. Twyman, No. 01-08-00904-CV,
2009 WL 2050979, at *5–6 (Tex. App.––Houston [1st Dist.] July
16, 2009, no pet.) (mem. op.) (holding that trial court did not abuse its discretion by
granting temporary injunction when the only way to preserve the status quo and
prevent further harm to the trust was to deny trustee the ability to withdraw
any additional funds from the trust while litigation was pending).  We overrule Appellants’ second and third
issues.

IV.  Conclusion

 

          Having
overruled all three of Appellants’ issues, we affirm the trial court’s amended
temporary injunction order.

 

 

SUE WALKER
JUSTICE

 

PANEL:  DAUPHINOT, GARDNER, and WALKER, JJ.

 

DELIVERED:  January 13,
2011











          [1]See Tex. R.
App. P. 47.4.





[2]The trial court’s amended temporary
injunction sets the case for trial on January 31, 2010.  Despite the clerical error in the year the
case is set for trial, the amended order meets the requirements of rule
683.  Tex. R. Civ. P. 683; see Miller v. K & M P’ship, 770
S.W.2d 84, 88 (Tex. App.––Houston [1st Dist.] 1989, no writ) (declining to find
that typographical error in trial date––which was prior to date of order––in
temporary injunction order rendered order void).

We note that the record was prepared,
briefing was completed, and this case was submitted to this court on December
1, 2010.





[3]The
trial court also heard testimony from proposed receiver David Morraine, but
that testimony is not pertinent to the arguments Appellants raise regarding the
temporary injunction.





[4]Keith
was questioned regarding the bankruptcy petition that he had filed, and he
admitted that it did not list KHBD or that he had a wife and that he had reported
his sole source of income as unemployment benefits, despite that he was paid
$267,863 (according to another exhibit).  Keith also admitted that the KHBD tax returns
did not reflect the $13,000 that he was paid. 





[5]Keith
noted that Plaintiff’s Exhibit 4 showed that KHBD expected to make $1.4 million
in 2000, but he said that they did not realize that amount.





[6]Rider’s
understanding was that Cannaday’s salary was a fixed expense of $10,000 per
month.





[7]Rider
believes that there may be more than one shareholders’ agreement.





[8]Cannaday
admitted that he was denied a builder’s license in 2004 due to “prior criminal
activity.”