**Motion to Strike Denied as Moot; Affirmed and Memorandum Opinion filed June 29, 2021.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-19-00514-CV
### NO. 14-19-00695-CV

---

**MOSAIC BAYBROOK ONE LP; MOSAIC BAYBROOK TWO, LP; MOSAIC BAYBROOK ONE GP LLC; MOSAIC BAYBROOK TWO GP LLC; MOSAIC RESIDENTIAL, INC.; ROBERT M. WEBER; VELISSA PARMER; ABID BHIMANI; MOSAIC GP FUND III LLC; EASTHAM CAPITAL FUND III (QP) LP; EASTHAM CAPITAL FUND IV, LP; AUSPAY-BAYBROOK, LLC; AUSPAY-MOSAIC GP, LLC; WILLIAMSBURG ENTERPRISES, LLLP; PHILIP SALEM; WIDAD SALEM; BAYBROOK LL, LLC; THE MATTHEW ROSENTHAL IRREVOCABLE TRUST 2007, AND TREE OPPORTUNITIES SERIES, LLC, Appellants**

**V.**

**TAMMY CESSOR AND PAUL SIMIEN, Appellees**

---

**On Appeal from the 269th District Court
Harris County, Texas
Trial Court Cause No. 2019-10104**

---

## MEMORANDUM OPINION

In two separate cause numbers, which we address together, appellants Mosaic Baybrook One, LP; Mosaic Baybrook Two, LP; Mosaic Baybrook One GP LLC; Mosaic Baybrook Two GP LLC; Mosaic Residential, Inc.; Robert M. Weber; Melissa Parmer; Abid Bhimani; Mosaic GP Fund III LLC; Eastham Capital Fund III (QP) LP; Eastham Capital Fund IV, LP; Auspay-Baybrook, LLC; Auspay-Mosaic GP, LLC; Williamsburg Enterprises, LLLP; Philip Salem; Widad Salem; Baybrook LL, LLC; The Matthew Rosenthal Irrevocable Trust 2007; and Tree Opportunities Series, LLC[1] ("Baybrook Appellants") appeal a temporary injunction granted in favor of appellees Tammy Cessor and Paul Simien (we will refer to "Cessor" and "Simien," individually as such, and will refer to Cessor and Simien collectively as "Tenant Appellees") and the trial court's denial of Baybrook Appellants' motion to dismiss pursuant to the Texas Citizens Participation Act ("TCPA"). In what we construe as four issues, Baybrook Appellants argue that: (1)

[1] The Baybrook Appellants fall into four categories:

- Mosaic Baybrook One, LP and Mosaic Baybrook Two, LP (collectively, "the LP Defendants") owned the Baybrook Village Apartments from May 2015 through October 2018.

- Mosaic Residential, Inc. ("Residential") manages the apartment complex and serves as the landlord, both under the old and new ownership.

- Baybrook LL, LLC ("Baybrook") purchased the Baybrook Village Apartments on October 31, 2018.

- Baybrook Appellants concede that the remaining Baybrook Appellants—Mosaic Baybrook One GP LLC; Mosaic Baybrook Two GP LLC; Robert M. Weber; Velissa Parmer; Abid Bhimani; Mosaic GP Fund III LLC; Eastham Capital Fund III (QP) LP; Eastham Capital Fund IV, LP; Auspay-Baybrook, LLC; Auspay-Mosaic GP, LLC; Williamsburg Enterprises, LLLP; Philip Salem; Widad Salem; and Baybrook LL, LLC.—are "insiders" as defined under the Texas Uniform Fraudulent Transfer Act ("TUFTA"). *See* Tex. Bus. & Com. Code Ann. § 24.003(7). We therefore refer to these Baybrook Appellants as "the Insiders." The Matthew Rosenthal Irrevocable Trust 2007, and Tree Opportunities Series, LLC were added as defendants on July 11, 2019. These two are also referred to as insiders.

2

the trial court erred in granting a temporary injunction in favor of Tenant Appellees; (2) the temporary injunction order was void for lack of specificity; (3) the trial court erred by denying Baybrook Appellants' TCPA motion to dismiss; and (4) the trial court erred in granting attorney's fees on the basis of finding Baybrook Appellants' TCPA motion to dismiss frivolous. We affirm.

## I. BACKGROUND[2]

Tenant Appellees are plaintiffs in separate class-action lawsuits against Baybrook Appellants that were filed in two Harris County district courts.[3] Tenant Appellees were tenants at Baybrook Village Apartments. Tenant Appellees alleged that the LP Defendants violated various landlord/tenant statutes. More specifically, Cessor asserted a statutory cause of action based on Baybrook Appellants' alleged violation of § 92.019 of the Texas Property Code, which regulates the late fees that landlords may assess against tenants who fail to pay their rent on time. *See* Tex. Prop. Code Ann. § 92.019. Simien asserted a statutory cause of action based on Baybrook Appellants' alleged violation of section 13.505 of the Texas Water Code. *See* Tex. Water Code Ann. § 13.505. Simien alleged Baybrook Appellants charged tenants for "water and sewage charges" in excess of the amount of water and sewage charges for the complex actually paid by the Baybrook Appellants.

Helpful to our analysis is a timeline of the pertinent events leading up to the current lawsuit:

- September 10, 2018: In Simien's lawsuit, partial summary judgment was granted on liability in favor of Tenant Appellees.

---

[2] Because the parties are familiar with the facts of the case and the evidence adduced at trial, we set forth the facts of the case necessary to advise the parties of the court's decision and its reasoning in light of the issues raised. *See* Tex. R. App. P. 47.1, 47.4.

[3] Cause No. 2017-12564 *Cessor, et al. v. Baybrook Village, et al.*, in the 215th Judicial District Court of Harris County and cause No. 2017-08379 *,Simien, et al. v. Baybrook Village, et al.*, in the 133rd Judicial District of Harris County.

3

- October 24, 2018: The Simien lawsuit was certified as a class action.

- October 31, 2018: The LP Defendants sold the apartment complex to Baybrook for $60.25 million.

- November 12, 2018: The trial court held a class certification hearing on the Cessor lawsuit. A representative of the LP Defendants testified that the LP Defendants still owned the apartments.

- November 21, 2018: The Cessor lawsuit was certified as a class action. [4]

- February 8, 2019: Tenant Appellees filed a fraudulent transfer action, which is the underlying action in the present appeal, against Baybrook Appellants pursuant to TUFTA. Tenant Appellees alleged that the sale of the apartment complex and the subsequent transfer of the sale money to various entities was intended to improperly "remove assets from the reach of [Tenant Appellees] and the Classes they represent."

- April 18, 2019: Baybrook Appellants filed a motion to dismiss pursuant to the TCPA.

- May 24, 2019: Tenant Appellees filed a motion for temporary injunction.

- June 14, 2019: The trial court granted Tenant Appellees' motion for temporary injunction.

- June 27, 2019: Baybrook Appellants filed a timely notice of appeal concerning the interlocutory order granting the temporary injunction. [5]

---

[4] Baybrook Appellants sought appellate review of the trial courts' certification of the class-action suits in both the underlying *Simien* and *Cessor* cases. The First Court of Appeals affirmed the trial courts' certification in both cases on September 22, 2020. *See Mosaic Baybrook One, L.P. v. Simien*, No. 01-18-01049-CV, 2020 WL 5637499, at *1 (Tex. App.—Houston [1st Dist.] Sept. 22, 2020, pet. filed) (mem. op.); *Mosaic Baybrook One, L.P. v. Cessor*, No. 01-18-01057-CV, 2020 WL 5637212, at *1 (Tex. App.—Houston [1st Dist.] Sept. 22, 2020, pet. filed) (mem. op.).

[5] The corresponding appellate cause number is No. 14-19-00514-CV.

- August 12, 2019: The trial court denied Baybrook Appellants' motion to dismiss.

- September 3, 2019: Baybrook Appellants filed a timely notice of appeal concerning the denial of their motion to dismiss.[6] On appeal, this action was consolidated with Baybrook Appellants' appeal from the trial court's interlocutory order granting the temporary injunction.

## II. TEMPORARY INJUNCTION

In what we construe as their first and second issues, the Baybrook Appellants argue that the trial court erred by granting the Tenant Appellees' motion for temporary injunction. More specifically, in their first issue, Baybrook Appellants argue that Tenant Appellees failed to present sufficient evidence that their claims were likely to succeed on the merits. And in their second issue, Baybrook Appellants assert that the temporary injunction order is void because it: (1) does not provide reasonable detail as to which accounts must be frozen; and (2) fails to identify what irreparable harm the Tenant Appellees would suffer.

### A.     STANDARD OF REVIEW & APPLICABLE LAW

We generally review the granting of a temporary injunction for abuse of discretion. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002); *Tex. Black Iron, Inc. v. Arawak Energy Int'l, Ltd.*, 527 S.W.3d 579, 584 (Tex. App.— Houston [14th Dist.] 2017, no pet.). A trial court abuses its discretion when it acts unreasonably or in an arbitrary manner, without reference to guiding rules or principles. *Beaumont Bank v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991). However, we apply a de novo standard of review when the issue turns on pure questions of law. *Pinnacle Premier Props., Inc. v. Breton*, 447 S.W.3d 558, 562 (Tex. App.— Houston [14th Dist.] 2014, no pet.).

---

[6] The corresponding appellate cause number is No. 14-19-00695-CV.

A temporary injunction is an "extraordinary remedy." *Butnaru*, 84 S.W.3d at 204. To obtain a temporary injunction, the applicant must prove: (1) the existence of a cause of action against the defendant; (2) a probable right to the relief sought; and (3) that a probable, imminent, and irreparable injury would occur in the interim if the injunction were not granted. *Id.*; *see Tex. Black Iron*, 527 S.W.3d at 584. The applicant is not required to establish that it will prevail on final trial. *See Walling v. Metcalfe,* 863 S.W.2d 56, 58 (Tex. 1993).

When a court issues a temporary injunction order, it must satisfy certain specificity requirements. *See* Tex. R. Civ. P. 683. Rule 683 of the Texas Rules of Civil Procedure requires that temporary injunction orders must (1) contain a specific date setting the cause for trial and (2) set forth the reasons justifying the issuance of the temporary injunction in specific terms. *Id.*; *see State v. Cook United, Inc*., 464 S.W.2d 105, 106 (Tex. 1971) (holding that it is necessary to give the reasons "why injury will be suffered" if the temporary injunction were not ordered); *see also In re Meyer*, No. 14-14-00833-CV, 2014 WL 5465621, at *3 (Tex. App.—Houston [14th Dist.] Oct. 24, 2014, orig. proceeding) (mem. op.) (per curiam) ("[A] temporary order must (1) set forth the reasons for its issuance; (2) be specific in terms; (3) describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained."). These provisions are mandatory and must be strictly followed. *See Qwest Commc'ns Corp. v. AT & T Corp.*, 24 S.W.3d 334, 337 (Tex. 2000). If they are not strictly complied with, the temporary injunction order is subject to being declared void and dissolved. *See* Tex. R. Civ. P. 683; *Interfirst Bank San Felipe v. Paz Constr. Co.,* 715 S.W.2d 640, 641 (Tex. 1986); *Hoist Liftruck Mfg., Inc. v. Carruth-Doggett, Inc.*, 485 S.W.3d 120, 123 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

The purpose of TUFTA is to "prevent fraudulent transfers of property by a debtor who intends to defraud creditors by placing assets beyond their

6

reach." *Kaufmann v. Morales,* 93 S.W.3d 650, 653 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (internal quotations omitted) (quoting *Tel. Equip. Network, Inc. v. TA/Westchase Place, Ltd.,* 80 S.W.3d 601, 607 (Tex. App.—Houston [1st Dist.] 2002, no pet.)). To accomplish that end, TUFTA permits a creditor, under certain circumstances, to set aside a debtor's fraudulent transfer of assets. *See* Tex. Bus. & Com. Code Ann. § 24.008(a); *Wohlstein v. Aliezer,* 321 S.W.3d 765, 776 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

Under section 24.005 of TUFTA:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

Tex. Bus. & Com. Code Ann. § 24.005.

Direct proof of fraudulent intent is often unavailable, but circumstantial evidence may be used to prove fraudulent intent. *See Wohlstein,* 321 S.W.3d at 777; *Walker v. Anderson,* 232 S.W.3d 899, 914 (Tex. App.—Dallas 2007, no pet.). Section 24.005(b) of TUFTA sets out a non-exhaustive list of facts and

7

circumstances, which are known as "the badges of fraud," to be considered in determining whether a transfer was made with actual intent to defraud. *See* Tex. Bus. & Com. Code Ann. § 24.005(b). The badges of fraud that are relevant in the present case include: "the transfer or obligation was to an insider"; "before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit"; "the transfer was of substantially all the debtor's assets"; and "the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred." *Id.* § 24.005(b)(1), (4), (5), (9). An individual badge of fraud is not conclusive, but a concurrence of many badges in the same case supports a strong case of fraud. *See Wohlstein,* 321 S.W.3d at 777; *Walker,* 232 S.W.3d at 914.

Section 24.006 of TUFTA states that a transfer is fraudulent "as to a creditor whose claim arose before the transfer was made . . . if the debtor made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer . . . and the debtor . . . became insolvent as a result of the transfer or obligation." *See* Tex. Bus. & Com. Code Ann. § 24.006(a). This avenue for remedy is separate and independent from the grounds provided in section 24.005. *See Corpus v. Arriaga*, 294 S.W.3d 629, 637 (Tex. App.—Houston [1st Dist.] 2009, no pet.).

**B.    APPLICATION**

**1.    Probable Right to Recovery**

Baybrook Appellants argue that Tenant Appellees failed to present any evidence that they are likely to succeed on their underlying class-action claims arising from the Texas Property and Water Codes. However, Baybrook Appellants have not offered any authority for the proposition that to obtain injunctive relief grounded on a TUFTA claim, an applicant must prove a "case within a case" regarding the underlying transaction, such as in legal malpractice lawsuits. *See, e.g., Hoover v. Larkin*, 196 S.W.3d 227, 231 (Tex. App.—Houston [1st Dist.]

8

2006, pet. denied) ("If a legal malpractice case arises from prior litigation, a plaintiff must prove that, but for the attorney's breach of his duty, the plaintiff would have prevailed in the underlying case."). On the other hand, several appellate courts have concluded that an applicant seeking injunctive relief under TUFTA is not required to demonstrate the probable right to relief on the underlying claim. *See Sargeant v. Al Saleh*, 512 S.W.3d 399, 414 (Tex. App.—Corpus Christi–Edinburg 2016, no pet.) ("Under the express terms of TUFTA, Al Saleh is a 'creditor' because he 'has a claim. . . .' Under TUFTA, the claim can be equitable and need not be matured or reduced to judgment."); *Blackthorne v. Bellush*, 61 S.W.3d 439, 443–44 (Tex. App.—San Antonio 2001, no pet.) ("Tort claimants, such as the appellees, are entitled to file causes of action under TUFTA based upon pending, unliquidated tort claims."); *see also Rocklon, LLC v. Paris*, No. 09-16-00070-CV, 2016 WL 6110911, at *2-3 (Tex. App.—Beaumont Oct. 20, 2016, no pet.) (mem. op.) (rejecting argument that plaintiff had to "present sufficient competent evidence supporting a probable right to recover on her [underlying wrongful death] claims"); *Williams v. Performance Diesel, Inc.*, No. 14-00-00063-CV, 2002 WL 596414, at *2 (Tex. App.—Houston [14th Dist.] Apr. 18, 2002, no pet.) (mem. op.) (observing that TUFTA defines "claim" broadly as "a right to payment or property, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured"). Thus, the relevant inquiry is whether the Tenant Appellees provided sufficient evidence to show a probable right to relief on their TUFTA claim, not the underlying class-action lawsuits. *See Tex. Black Iron*, 527 S.W.3d at 584.

In its order granting injunctive relief, the trial court stated: "The Court further finds that the October 2018 transfer of the LP Defendants' sole asset and the simultaneous distribution of substantially all of the net proceeds bears several

'badges' of fraud under TUFTA." Concerning the specific badges, the trial court found that: (1) the alleged transfers were made to "insiders under TUFTA"; (2) the LP Defendants "had actual knowledge of those multi-million-dollar statutory damage claims before they transferred their sole asset in October 2018"; (3) the LP Defendants sold their "sole asset" and "distributed substantially all of the proceeds"; (4) the LP Defendants "are now insolvent even though the day before the transfer . . . they had assets worth at least $60 million." On appeal, Baybrook Appellants challenge the sufficiency of the evidence regarding the various badges of fraud. *See* Tex. Bus. & Com. Code Ann. § 24.005(b)(1), (4), (5), (9).

However, more importantly, Baybrook Appellants completely fail to address section 24.006(a) on appeal. Tenant Appellees alleged below that Baybrook Appellants' transfer of the property and sale proceeds were fraudulent under both §§ 24.005 and 24.006. Under section 24.006, a transfer is fraudulent if the debtor does not receive a reasonably equivalent value in exchange for the transfer and the debtor becomes insolvent as a result of the transfer. *See id.* § 24.006(a). A debtor is insolvent "if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation." *Id.* § 24.003(a). Tenant Appellees alleged below that Baybrook Appellants, while facing multiple multi-million-dollar lawsuits, sold their only asset for over $60 million dollars. Tenant Appellees additionally asserted that Baybrook Appellants subsequently transferred the proceeds of that sale to various other parties and limited partners until the LP Defendants were only left with approximately $470,000. And Tenant Appellees allege that even though Residential had approximately $3.3 million in total assets, Residential only possessed about $721,00 in net assets that could be used to satisfy potential claims because Residential had $479,000 worth of third-party liability and $2.1 million of its total assets are proceeds from the Baybrook complex itself. *See* Tex. Bus. & Com. Code Ann. § 24.003(d) ("Assets under this section do not include property

10

that has been transferred, concealed, or removed with intent to hinder, delay, or defraud creditors or that has been transferred in a manner making the transfer voidable under this chapter.").

Because Tenant Appellees presented evidence to demonstrate that Baybrook Appellants did not receive reasonably equivalent value in exchange for their transfer of the money to the Insiders and the transfer to the Insiders left the LP Defendants insolvent, we conclude that the trial court did not abuse its discretion in determining that Tenant Appellees had a probable right to recover on its fraudulent-transfer claims. *See id.* § 24.006(a); *Wohlstein,* 321 S.W.3d at 777.

### 2. Irreparable Harm

Baybrook Appellants next argue that the temporary injunction order fails to explain what irreparable injury the Tenant Appellees would sustain if the injunction were not issued. More specifically, Baybrook Appellants claim there was no testimony elicited showing that the remaining funds were at risk of being lost or depleted. Also, according to Baybrook Appellants, the trial court's injunction order fails to provide a specific amount for the potential value of the contingent damages that rely on the underlying claims.

The trial court's injunction order provided relief against the LP Defendants, Mosaic Baybrook One GP, LLC, Mosaic Baybrook Two GP, LLC, and Mosaic Residential, Inc. Concerning the LP Defendants, Mosaic Baybrook One GP, LLC, and Mosaic Baybrook Two GP, LLC, the order enjoined them from:

> making any further disbursements or transfers of any monies, cash equivalents or other assets received by them from the transfer or sale of Baybrook Village in or about October 2018. All such funds from the transfer or sale of Baybrook Village in or about October 2018 in the possession or subject to the control of these Defendants shall be maintained in the accounts where they are currently deposited and shall not be dissipated unless further ordered by this Court upon motion or upon the agreement of the parties to this cause subject to

Court approval.

Concerning Residential, the order enjoined it from:

> making any further disbursements or transfers of any monies, cash equivalents or other assets received by them from the transfer or sale of Baybrook Village in or about October 2018 that would cause their cash and cash equivalent current assets to fall below $400,000. The sum of at least $400,000 shall be maintained in the accounts of the company where they are currently deposited and shall not be dissipated below that amount unless further ordered by this Court upon motion or upon the agreement of the parties to this cause subject to Court approval.

Testimony adduced below indicated that the LP Defendants only had about $470,000 in net assets. However, testimony from Baybrook Appellants' representatives indicated that the LP Defendants are in the process of ending their business. Additionally, based on that testimony, the trial court concluded that "the LP Defendants are in the winding down phase, will not receive any further assets or conduct further business, and absent injunctive relief, the remaining assets are likely to be dissipated before the claims of Plaintiffs and the classes in the two class action lawsuits are concluded." This adequately explains that, if the assets were not frozen, there is a likelihood that there would not be enough money available to cover any potential damage awards arising from the underlying actions. *See Tex. Black Iron*, 527 S.W.3d at 587 ("Texas cases hold that a plaintiff does not have an adequate remedy at law if the defendant faces insolvency or becoming judgment proof before trial."); *Tel. Equip. Network, Inc. v. TA/Westchase Place, Ltd.*, 80 S.W.3d 601, 611 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (holding that the trial court did not abuse its discretion when evidence demonstrated that an injunction was necessary to prevent action that would essentially render debtor insolvent, judgment-proof, or an empty corporate shell and thereby giving creditor no adequate remedy at law).

Concerning Residential, the temporary injunction order froze $400,000 of

their assets. The record evidenced that Residential's total assets were nearly $3.3 million. However, testimony also reflected that Residential frequently makes large real estate investments that significantly deplete its assets. Although testimony from Residential indicated that it planned to keep "some" money in its accounts to address the class-action claims, Residential also testified that it disputed plaintiff's damages calculations. Accordingly, this evidence suggests that Residential, if left to its own devices and without an injunction, will likely not maintain sufficient assets to satisfy the Tenant Appellees' class-action claims. Based on this evidence, the trial court concluded in its order that Residential "likely will dissipate and use its remaining assets as it so chooses absent an injunction." We conclude that the trial court's order was sufficiently specific in defining the irreparable harm that Tenant Appellees would suffer absent a temporary injunction. *See* Tex. R. Civ. P. 683.

### 3. Specificity Regarding Frozen Assets

Baybrook Appellants next allege that the temporary injunction order is void on its face by failing to specifically "identify the accounts by the name of the bank or financial institution or any account number as to any of the Mosaic entities in which funds are to be frozen, as well as failing to specify what amount must be maintained in the unidentified "accounts" for [LP Defendants]." Baybrook Appellants rely on *In re Meyer*, No. 14-14-00833-CV, 2014 WL 5465621, at *3 (Tex. App.—Houston [14th Dist.] Oct. 24, 2014, no pet.) (mem. op.) (per curiam), for the proposition that an injunction order can be void for lack of specificity by failing to specifically identify the bank account numbers to be frozen. *See id.* However, we find *Meyer* to be distinguishable from the present case.

In *Meyer*, our Court considered a temporary injunction that restrained a defendant from (1) "transferring any funds from PTUSA's Chase account" and (2) "transferring any funds that are attributable to Gulfstream trades from any financial

account under [Meyer's] possession, custody, or control, up to $252.115.18." *Id.* at *2. However, the trades referred to in that order took place over the course of a year. *See id.* at *1. Tracing proceeds from a year's worth of trading creates ambiguities, and we ultimately declared the injunction void because it failed to specify the relevant bank accounts or the specific funds attributable to the Gulfstream trades. *See id.* By contrast, in the present case, the temporary injunction freezes the proceeds from a single transaction. The order specifies that it is freezing the money in connection with "Baybrook Village apartments . . . located generally at 2702 West Bay Area Blvd, Webster, Texas 77598." The order specified that the sale was completed on October 31, 2018. The financial records produced by Baybrook Appellants show that the LP Defendants had a single cash operating account. Likewise, Residential had a single business checking account. Thus, compared to *Meyer*, the order was sufficiently specific in the present case such that there could not be any confusion as to which bank accounts or which funds were frozen.

Also, we note that a significant reason the temporary injunction order fails to identify the bank account numbers of the Baybrook Appellants is because the Baybrook Appellants refused to produce them below. In the underlying class-action lawsuits, Cessor asked Residential and the LP Defendants to identify their bank accounts and investment accounts, but Residential and the LP Defendants refused to provide the requested information. On the day of the temporary injunction hearing, the Baybrook Appellants finally provided discovery, but still refused to divulge any bank account numbers. Baybrook Appellants cannot refuse to provide their bank account numbers and then subsequently argue that the injunction order is void for failure to include the bank account numbers. We conclude, in this scenario, that the injunction order was sufficiently specific and is not void despite failing to identify specific bank account numbers. *See* Tex. R. Civ.

14

P. 683.

In summary, we conclude that (1) Tenant Appellees presented sufficient evidence that their TUFTA claims were likely to succeed on the merits; (2) the temporary injunction order is not void because it identifies the irreparable harm Tenant Appellees would suffer; and (3) the temporary injunction order is not void for failing to identify the bank account numbers to be frozen. We overrule Baybrook Appellants' first and second issues.

## III. TCPA

In what we construe as Baybrook Appellants' third issue, Baybrook Appellants argue that Tenant Appellees' claims should have been dismissed pursuant to the TCPA. In several sub-issues, Baybrook Appellants (1) challenge the amount of monetary relief that the Tenant Appellees may obtain on their TUFTA claims and (2) assert that the trial court should have granted the motion to dismiss because (a) Tenant Appellees lack standing by failing to obtain class-action certification; (b) conspiracy to commit fraud under TUFTA is not a viable claim for general creditors; (c) Tenant Appellees are not creditors; and (d) Tenant Appellees failed to present clear and specific evidence of fraudulent transfer and conspiracy to commit a fraudulent transfer. In their fourth issue, Baybrook Appellants assert that the trial court erred in granting attorneys' fees on the ground that their TCPA motion to dismiss was frivolous.

### A.     STANDARD OF REVIEW & APPLICABLE LAW

The TCPA is an anti-SLAPP law; "SLAPP" is an acronym for "Strategic Lawsuits Against Public Participation."[7] *Fawcett v. Grosu*, 498 S.W.3d 650, 654

---

[7] The Texas Legislature amended the TCPA in its 2019 legislative session and the amendments are effective September 1, 2019. Because this suit was filed before the effective date of the amendments, it is governed by the statute as it existed before the amendments and all of our citations are to the TCPA as it existed prior to September 1, 2019. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 1-12, 2019 Tex. Gen. Laws 684, 684-87 (current versions

(Tex. App.—Houston [14th Dist.] 2016, pet. denied). The TCPA "protects citizens from retaliatory lawsuits that seek to intimidate or silence" their exercise of First Amendment freedoms and provides a procedure for the "expedited dismissal of such suits." *In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015) (orig. proceeding); *see* Tex. Civ. Prac. & Rem. Code Ann. § 27.002. However, the TCPA is not intended to bring about the dismissal of meritorious claims. *In re Lipsky*, 460 S.W.3d at 589.

We review the trial court's denial of a TCPA motion to dismiss de novo. *See Rehak Creative Servs., Inc. v. Witt*, 404 S.W.3d 716, 725 (Tex. App.—Houston [14th Dist.] 2013, pet. denied), *disapproved on other grounds by In re Lipsky*, 460 S.W.3d at 579. In doing so, we "make[ ] an independent determination and appl[y] the same standard used by the trial court in the first instance." *Id.* Application of this standard usually involves a three-step analysis. *See Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 132 (Tex. 2019); *see also Huynh v. Francois-Le*, 14-19-00138-CV, 2021 WL 686291, at *2 (Tex. App.—Houston [14th Dist.] Feb. 23, 2021, no pet.) (mem. op.). First, the burden is on the movant to show by a preponderance of the evidence that the challenged claim is based on, relates to, or is in response to the movant's exercise of: (1) the right of free speech; (2) the right to petition; or (3) the right of association. *See Creative Oil & Gas*, 591 S.W.3d at 132.; Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b). Next, the burden shifts to the nonmovant to "establish[ ] by clear and specific evidence a prima facie case for each essential element of the claim in question." Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c). If the nonmovant satisfies this second step, the burden shifts back to the movant for the final step to prove by a preponderance of the evidence each essential element of a

at Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001-27.011); *see, e.g., HDG, Ltd. v. Blaschke*, No. 14-18-01017-CV, 2020 WL 1809140, at *3 n.2 (Tex. App.—Houston [14th Dist.] Apr. 9, 2020, no pet.) (mem. op.).

valid defense to the nonmovant's claim.[8] *See id.* § 27.005(d).

**B.     APPLICATION**

As a preliminary note, Tenant Appellees do not challenge the application of the TCPA; instead, they focus on demonstrating that they established by clear and specific evidence a prima facie case for each essential element of their fraudulent transfer and civil conspiracy to commit fraud claims.

### 1.     Amount of Monetary Relief Available

Regarding Baybrook Appellants' arguments challenging the amount of relief Tenant Appellees may seek, those arguments are irrelevant. On appeal from the denial of a TCPA motion to dismiss, an appellant may challenge the underlying legal action seeking to be dismissed, not the "requested remedy." *Van Der Linden v. Khan*, 535 S.W.3d 179, 203 (Tex. App.—Fort Worth 2017, pet. denied); *see Grant v. Pivot Tech. Sols., Ltd.*, 556 S.W.3d 865, 883 (Tex. App.—Austin 2018, pet. denied) (finding that the plaintiffs "were not required at this stage of the litigation to prove the exact amount of their damages"). Thus, our focus is on the trial court's finding that Tenant Appellees have provided "clear and specific prima-facie evidence supporting each element of their causes of action," not whether Tenant Appellees have pled the appropriate amount of damages. Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c).

### 2.     Alleged Jurisdictional Issues

Next, Baybrook Appellants argue for the first time on appeal that their motion to dismiss should have been granted on a number of jurisdictional grounds.

---

[8] As here, the three-step process is sometimes simplified and referred to as a two-step process, in which the third step is omitted. *See Wayne Dolcefino & Dolcefino Commc'ns, LLC v. Cypress Creek EMS*, 540 S.W.3d 194, 198 (Tex. App.—Houston [1st Dist.] 2017, no pet.); *see also Navidea Biopharmaceuticals, Inc. v. Capital Royalty Partners II, L.P.*, No. 14-18-00740-CV, 2020 WL 5087826, at *3 (Tex. App.—Houston [14th Dist.] Aug. 28, 2020, pet. denied) (mem. op.).

Baybrook Appellants first aver that Tenant Appellees failed to seek class-action certification of the new TUFTA claims. Thus, Baybrook Appellants argue, Tenant Appellees lack standing to bring their TUFTA claims "on behalf of non-existent class members."

Standing is a jurisdictional issue that cannot be waived. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). However, standing and capacity are two different issues: "[a] plaintiff has standing when it is personally aggrieved, regardless of whether it is acting with legal authority; a party has capacity when it has the legal authority to act, regardless of whether it has a justiciable interest in the controversy." *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848-49 (Tex. 2005) (quoting *Nootsie, Ltd. v. Williamson Cty. Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996)); *see Heckman v. Williamson Cty.*, 369 S.W.3d 137, 154 (Tex. 2012) (noting the three elements of standing: (1) plaintiffs must have suffered an injury; (2) the injury is fairly traceable to the defendants; and (3) it is likely that the injury will be redressed by a favorable decision); *El Paso Cty. Sheriff's Dep't v. Samaniego,* 803 S.W.2d 435, 437 (Tex. App.—El Paso 1991, no writ); *see also Wolfe v. Bock*, 01-93-00021-CV, 1996 WL 266719, at *3 (Tex. App.—Houston [1st Dist.] May 16, 1996, no writ) ("Standing and capacity are easily confused. A plaintiff has *standing* to bring suit if it has a legal right that has been breached. A party has *capacity* if it has legal authority to sue or be sued." (internal citations omitted)).

Here, Tenant Appellees have standing because they have been personally aggrieved. *See Lovato*, 171 S.W.3d at 848. More specifically, Tenant Appellees have been injured by the allegedly fraudulent transfers, that injury is fairly traceable to the Baybrook Appellants' transfer, and Tenant Appellees' injury is redressable by the remedies provided by TUFTA. *See Heckman*, 369 S.W.3d at 154. Therefore, Baybrook Appellants' arguments are not properly addressed as

Tenant Appellees' standing, but instead, whether Tenant Appellees have capacity to bring the TUFTA claims and obtain injunctive relief on behalf of others in the class in the underlying suits without first seeking new class-action certification for the TUFTA claims. But a "plaintiff's lack of capacity to bring suit on another's behalf does not deprive the trial court of subject matter jurisdiction over the suit, and a challenge to the plaintiff's capacity may thus be waived." *Intracare Hosp. N. v. Campbell*, 222 S.W.3d 790, 795 (Tex. App.—Houston [1st Dist.] 2007, no pet.). Because Baybrook Appellants did not file a verified denial challenging Tenant Appellees' capacity or raise this issue in the trial court, this issue has been waived. *See id.*; Tex. R. Civ. P. 93(1), (2).

In a related jurisdictional argument, Baybrook Appellants argue that the underlying class members are not "creditors" entitled to TUFTA's protections. However, this is not a jurisdictional question; this is a merits-based argument about whether the underlying class members have viable TUFTA claims. *See Meyers v. JDC/Firethorne, Ltd.*, 548 S.W.3d 477, 484-85 (Tex. 2018) ("A plaintiff does not lack standing simply because he cannot prevail on the merits of the claim; he lacks standing because his claim of injury is too slight for a court to afford redress."). Regardless, based on the record it is clear that the underlying class members are "creditors." TUFTA broadly defines a "creditor" as any "person . . . who has a claim," and a "claim" is "a right to payment or property, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." Tex. Bus. & Com. Code Ann. § 24.002(3), (4); *see Sargeant*, 512 S.W.3d at 414 (finding that the appellees was a creditor even though their claims had not yet been reduced to judgment).

### 3. Prima-Facie Evidence Supporting Each Element of Fraudulent Transfer and Conspiracy to Commit Fraudulent Transfer

Baybrook Appellants argue that Tenant Appellees failed to present clear and specific prima-facie evidence supporting each element of their causes of action. Tenant Appellees respond that they provided sufficient evidence to avoid dismissal. We agree with Tenant Appellees.[9]

As discussed above, Tenant Appellees sought, and the trial court granted, relief under both section 25.005 and section 24.006 of TUFTA. Under section 24.005, a transfer may be fraudulent due to the debtor's "actual intent to hinder, delay, or defraud any creditor of the debtor." Tex. Bus. & Com. Code Ann. § 24.005(a)(1). Second, under section 24.006, a transfer may be fraudulent if the transfer left the debtor insolvent—a status examined without regard to the debtor's actual intent underlying the transfer. *Id.* § 24.006(a). In their TCPA motion to dismiss, Baybrook Appellants denied liability under section 24.006. However, on appeal, Baybrook Appellants do not address this issue, and instead focus entirely on challenging the "badges of fraud" under section 24.005.

"[A]n appellant must challenge all independent grounds supporting the judgment or legal conclusion under attack." *Akhtar v. Leawood HOA, Inc.*, 525 S.W.3d 814, 819 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *see Oliphant Fin. LLC v. Angiano*, 295 S.W.3d 422, 423 (Tex. App.—Dallas 2009, no pet.) ("An appellant must attack all independent bases or grounds that fully support a complained of ruling or judgment."). "Any error in the challenged basis for the

---

[9] We note that Baybrook Appellants' brief in cause No. 14-19-00695-CV, which is the appeal following the denial of their TCPA motion to dismiss, frequently blends its arguments concerning the TCPA motion to dismiss and the temporary injunction. However, a temporary injunction is not to be relitigated in a TCPA appeal. *See Van Der Linden v. Khan*, 535 S.W.3d 179, 203 (Tex. App.—Fort Worth 2017, pet. denied) ("The TCPA provides for dismissal of actions, not remedies."); *see also Bui v. Dangelas*, No. 01-18-01146-CV, 2019 WL 5151410, at *5-6 (Tex. App.—Houston [1st Dist.] Oct. 15, 2019, pet. denied) (mem. op.).

order is rendered harmless where there is an unchallenged, alternate basis for the appealed order." *Akhtar*, 525 S.W.3d at 819; *see Angiano*, 295 S.W.3d at 423 ("If an independent ground fully supports the complained-of ruling or judgment, but the appellant assigns no error to that independent ground, we must accept the validity of that unchallenged independent ground, and thus any error in the grounds challenged on appeal is harmless."); *see also Morrison v. Profanchik*, No. 05-17-00680-CV, 2018 WL 4090635, at *4 (Tex. App.—Dallas Aug. 28, 2018, pet. denied) (mem. op.) ("Because [Baybrook Appellants] fail to challenge all grounds on which the trial court could have denied their motion to dismiss, we must accept the validity of the unchallenged grounds and affirm the order."). Therefore, because Baybrook Appellants do not challenge the validity of the trial court's ruling on the independent ground of section 24.006, we must affirm the trial court's order denying their motion to dismiss. *See Akhtar v. Leawood HOA, Inc.*, 525 S.W.3d at 819; *Angiano*, 295 S.W.3d at 423.

Next, Baybrook Appellants claim that their TCPA motion to dismiss should have been granted on Tenant Appellees' conspiracy to commit fraud under TUFTA claim. More specifically, Baybrook Appellants contend that (1) general creditors have no cause of action for conspiracy to commit fraudulent transfer; and (2) no evidence exists of damages, which is the fifth and final element of civil conspiracy. Baybrook Appellants rely on pre-TUFTA cases to assert that "a general creditor has no right in or lien upon property of the debtor and therefore suffers no damages if the debtor's property is conveyed to others to evade payment." *Stonecipher's Estate v. Butts' Estate*, 591 S.W.2d 806, 808 (Tex. 1979). However, unlike the applicable statutes cited in *Stonecipher*, TUFTA permits plaintiffs to pursue both money damages and equitable relief in regard to fraudulent transfers. *Wohlstein*, 321 S.W.3d at 776 ("Chapter 24 authorizes both equitable relief—that is, nullification of a fraudulent transfer—and money damages up to the value of the

21

property transferred."). The authority relied upon by Baybrook Appellants does not support their assertion that general creditors have no cause of action for conspiracy to commit a fraudulent transfer.

Furthermore, Baybrook Appellants do not challenge the first four elements of civil conspiracy. *See Agar Corp. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 141-42 (Tex. 2019) (stating the five elements of civil conspiracy: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; and (4) one or more unlawful, overt acts; and (5) damages). Baybrook Appellants only challenge the damages element, asserting that Tenant Appellees' "purported 'damages' asserted under the TUFTA claims are not really damages at all." However, TUFTA authorizes monetary relief for parties affected by an alleged fraudulent transfer. *See* Tex. Bus. & Com. Code Ann. § 24.009(b). And we have previously affirmed a finding of civil conspiracy to commit a fraudulent transfer even when the creditor's claim has not yet been reduced to a judgment against the debtor. *See Caspian Oil Servs., Inc. v. SE Mgmt., LLC*, No. 14-12-00535-CV, 2013 WL 5827672, at *5 (Tex. App.—Houston [14th Dist.] Oct. 29, 2013, no pet.) (mem. op.) ("Reynolds can be held liable for fraudulent transfer as a conspirator as long as there is evidence showing he participated in a conspiracy to fraudulently transfer COS 1's assets to COS 2.").

Therefore, we conclude that the trial court did not err in denying Baybrook Appellants' TCPA motion to dismiss. We overrule Baybrook Appellants' third issue.

### 4. Attorney's Fees

In their fourth and final issue, Baybrook Appellants argue that the trial court erred by granting attorney's fees.

We review the trial court's decision to award attorney's fees under section 27.009(b) of the TCPA for an abuse of discretion. *See Sullivan v. Tex. Ethics*

*Comm'n*, 551 S.W.3d 848, 857 (Tex. App.—Austin 2018, pet. denied); *see also Navidea Biopharmaceuticals, Inc. v. Capital Royalty Partners II, L.P.*, No. 14-18-00740-CV, 2020 WL 5087826, at *6 (Tex. App.—Houston [14th Dist.] Aug. 28, 2020, pet. denied) (mem. op.). "If the court finds that a motion to dismiss filed under [TUFTA] is frivolous or solely intended to delay, the court may award court costs and reasonable attorney's fees to the responding party." Tex. Civ. Prac. & Rem. Code Ann. § 27.009.

In denying Baybrook Appellants' motion to dismiss pursuant to the TCPA, the trial court made the following finding:

> The Court further finds that the direct and circumstantial evidence before the Court demonstrates by a preponderance of the evidence that Defendants' Motion to Dismiss had no basis in fact or law based on the preponderance of the evidence, of which Defendants were fully aware when they filed their motion to dismiss.

"Frivolous" is not defined in the TCPA. However, "the word's common understanding contemplates that a claim or motion will be considered frivolous if it has 'no basis in law or fact' and 'lacks a legal basis or legal merit.'" *Sullivan*, 551 S.W.3d at 857. Baybrook Appellants argue that in determining whether a motion to dismiss under the TCPA is frivolous, the only consideration to make is whether the TCPA applies. Tenant Appellees argue that, even if the broad definitions of the TCPA technically apply to a claim, a TCPA motion to dismiss can still be frivolous as to the merits of the plaintiffs' claims. We agree with Tenant Appellees.

Several courts, including our own, have concluded that even if the TCPA ultimately does not apply, a movant's motion to dismiss may still be non-frivolous. *See Sullivan*, 551 S.W.3d at 857 ("On this record and in accordance with our discussion above, in which we conclude that Sullivan's motion might be argued to technically fit the act's broad definition of a 'legal action,' we conclude that the trial court abused its discretion in concluding that Sullivan's TCPA motion was

frivolous."); *see also Navidea*, 2020 WL 5087826, at *6 ("In addressing Navidea's argument that CRG's declaratory-judgment action was based on the right to petition, we concluded that some of the communications at issue arguably constituted protected activity under the TCPA. On this basis alone, we cannot agree that Navidea's TCPA motion has *no* basis in law or fact."). However, in *Sullivan* and *Navidea*, the issue on appeal was the applicability of the TCPA. *See Sullivan*, 551 S.W.3d at 857; *Navidea*, 2020 WL 5087826, at *6. The present case is distinguishable because the parties do not dispute the applicability of the TCPA.

More importantly, to further distinguish the present case from *Sullivan* and *Navidea*, the trial court issued a temporary injunction order before Baybrook Appellants received a ruling on their TCPA motion to dismiss. At the hearing for temporary injunction, the trial court informed the parties that "[Tenant Appellees] met the prima facie case for a fraudulent transfer. It's there." Thus, as noted above, the trial court later concluded in its order denying the motion to dismiss that Baybrook Appellants' "Motion to Dismiss had no basis in fact or law based on the preponderance of the evidence, of which [Baybrook Appellants] *were fully aware when they filed their motion to dismiss.*" (emphasis added).

Given the unique nature and procedural history in this case and the deferential standard of review, we conclude that it was within the trial court's discretion to find that Baybrook Appellants' TCPA motion to dismiss was frivolous. *See Sullivan*, 551 S.W.3d at 857; *Lei v. Nat. Polymer Int'l Corp.*, 578 S.W.3d 706, 718 (Tex. App.—Dallas 2019, no pet.) (concluding that it was not an abuse of discretion to find that the appellants' TCPA motion to dismiss was frivolous, even though the TCPA applied, because there was substantial evidence to provide a prima facie case). We overrule Baybrook Appellants' fourth issue.

24

## IV. CONCLUSION

We affirm the trial court's temporary injunction order in favor of Tenant Appellees Tammy Cessor ("Cessor") and Paul Simien ("Simien") and the trial court's denial of Baybrook Appellants' motion to dismiss pursuant to the Texas Citizens Participation Act ("TCPA").[10]


/s/     Margaret "Meg" Poissant
        Justice


Panel consists of Justices Zimmerer, Poissant, and Wilson.

---

[10] In light of the Court's ruling, Tenant Appellees' Motion to Strike is denied as moot.