**Affirmed and Majority and Concurring Opinions filed June 29, 2023.**



In The

# Fourteenth Court of Appeals

### NO. 14-22-00505-CV

## FERCAN KALKAN, TXMV2017, LLC, AND ENKB-MONTICELLO, LLC, Appellants

## V.

## PABLO SALAMANCA, Appellee

**On Appeal from the 157th District Court
Harris County, Texas
Trial Court Cause No. 2022-33737**

## M A J O R I T Y   O P I N I O N

At issue in this interlocutory appeal is the propriety of a temporary injunction prohibiting a real estate owner and related entities from transferring or encumbering certain assets during the pendency of a plaintiff's fraudulent transfer claim against those parties. We hold that the plaintiff, appellee Pablo Salamanca, is a "claimant" under the Texas Uniform Fraudulent Transfer Act ("TUFTA")[1] and

---

[1] *See* Tex. Bus. & Com. Code ch. 24.

that the trial court did not abuse its discretion in finding that Salamanca proved an imminent, irreparable injury. For these reasons, we affirm.

## Background

In November 2017, Salamanca worked as a security guard at the Mira Vista Apartments. An assailant shot Salamanca several times as he attempted to save a tenant from physical assault. As a result of his gunshot wounds, Salamanca is alleged to have suffered severe medical complications, including a brain injury that left him under a legal disability for approximately one year. According to his pleading, Salamanca continues to endure severe neurological deficits to this day.

At the time of the shooting, Vista 2016, LLC ("Vista") owned the Mira Vista Apartments. Appellant Fercan Kalkan was the sole owner of Vista.[2] In January 2018, approximately two months after the shooting, Vista transferred ownership of the Mira Vista Apartments to a new entity, appellant TXMV 2017, LLC ("TXMV"), for ten dollars. Kalkan is the sole owner of TXMV. In June 2019, Salamanca filed suit against Vista and others, asserting a negligence claim and seeking to recover for his injuries from the shooting. In September 2019, Kalkan filed a pro se answer in the suit on behalf of Vista, generally denying liability.[3]

In March 2020, TXMV borrowed $17 million against the Mira Vista Apartments, the proceeds of which ($15,700,838.90) was deposited into TXMV's bank account. The next day, Kalkan caused TXMV to transfer $15,696,838 to his

---

[2] According to Kalkan, he creates single-member, single-purpose LLCs to own various apartment complexes.

[3] Texas's prohibition against nonlawyer representation of corporate entities applies to limited liability companies. *See Kunstoplast of Am., Inc. v. Formosa Plastics Corp., USA*, 937 S.W.2d 455, 456 (Tex. 1996) (stating that corporations may appear only through licensed attorneys); *Amron Props., LLC v. McGown Oil Co.*, No. 14-03-01432-CV, 2004 WL 438783, at *1 (Tex. App.—Houston [14th Dist.] Mar. 11, 2004, no pet.) (mem. op.) (stating that limited liability companies must appear through licensed attorneys).

personal bank account. The same day, Kalkan transferred $6,000,000 from his personal bank account to an investment account at Morgan Stanley. A few days later, Kalkan transferred $9.9 million to appellant ENKB-Monticello, LLC ("ENKB").[4] Kalkan wholly owned ENKB. ENKB then transferred that $9.9 million to pay a separate loan on an unrelated property.

In June 2022, based on alleged TUFTA violations, Salamanca sued Kalkan, TXMV, and ENKB, and requested a temporary injunction under the Act. After conducting a two-day hearing and receiving evidence and argument from counsel, the trial court granted a temporary injunction. In its order, the trial court found that the injunction was necessary based on:

> the evidence showing that Defendants have so encumbered Defendant [TXMV] as to render it insolvent, [that] Defendants [have engaged in a] pattern of transferring funds in violation of TUFTA in an effort to place those funds beyond the reach of creditors, [that] Defendants [have] continued [to] transfer of assets out of [TXMV] and that without the requested relief, this pattern of transferring assets will continue and essentially render [TXMV] judgment proof.

The court: (1) enjoined Kalkan from transferring, encumbering, or dissipating any of the funds in his Morgan Stanley accounts; (2) enjoined defendants from participating in, engaging in, facilitating, effecting, negotiating, or consummating any sales, transfers, disbursements or other dispositions of any and all real estate owned by TXMV or ENKB; (3) enjoined defendants from encumbering said assets with any additional loans or other financial arrangements; (4) enjoined TXMV and ENKB from any transfer or encumbrance of their assets in excess of $50,000 without Salamanca's consent or court approval; and (5) enjoined defendants from destroying litigation- or asset-related evidence.

---

[4] Although only approximately $9.7 million in loan proceeds remained after the $6,000,000 transfer, Kalkan agreed that the $9.9 million transfer to ENKB "came out of the Mira Vista" refinancing.

Appellants timely filed this interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(4).

## Analysis

Appellants challenge the temporary injunction on three grounds: (1) Salamanca is not a "creditor" under TUFTA; (2) there is no evidence to support the trial court's finding of imminent and irreparable harm; and (3) there is no evidence of the majority of the "badges of fraud." We address each ground in turn.

### A. Standard of Review

The purpose of a temporary injunction is to preserve the status quo pending a trial on the merits. *See Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002); *8100 N. Fwy. Ltd. v. City of Houston*, 329 S.W.3d 858, 861 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Generally, to obtain a temporary injunction, the applicant must prove a valid claim against the defendant, a probable right to relief, and imminent, irreparable injury in the interim. *See Butnaru*, 84 S.W.3d at 204; *8100 N. Fwy.*, 329 S.W.3d at 861.

We review the trial court's decision on a temporary injunction request for an abuse of discretion. *See Butnaru*, 84 S.W.3d at 204; *8100 N. Fwy.*, 329 S.W.3d at 861. We must not substitute our judgment for the trial court's judgment and may not reverse unless the trial court's action was so arbitrary that it exceeded the bounds of reasonableness. *See Butnaru*, 84 S.W.3d at 204; *8100 N. Fwy.*, 329 S.W.3d at 861.

Any factual issues decided by the trial court in reaching the decision under review are not reviewed under legal and factual sufficiency standards, but the facts determined by the trial court must have some support in the evidence. *See Lindsey v. State*, No. 01-20-00373-CV, 2021 WL 3868310, at *5 (Tex. App.—Houston [1st

Dist.] Aug. 31, 2021, no pet.) (mem. op.); *Haddock v. Quinn*, 287 S.W.3d 158, 169 n.2 (Tex. App.—Fort Worth 2009, pet. denied), *abrogated on other grounds by TotalEnergies E&P USA, Inc. v. MP Gulf of Mex., LLC*, 667 S.W.3d 694 (Tex. 2023). If some evidence reasonably supports the trial court's decision, no abuse of discretion has been shown. *Butnaru*, 84 S.W.3d at 211. We review the evidence submitted to the trial court in the light most favorable to its ruling, drawing all legitimate inferences from the evidence and deferring to the trial court's resolution of conflicting evidence. *Lindsey*, 2021 WL 3868310, at *5. An abuse of discretion does not exist if the trial court bases its decision on conflicting evidence. *See id.*

Our review is limited to determining whether the trial court abused its discretion; we do not reach the merits of the underlying case. *See Davis v. Huey*, 571 S.W.2d 859, 861-62 (Tex. 1978); *8100 N. Fwy.*, 329 S.W.3d at 861. When, as here, no findings of fact or conclusions of law are filed, the trial court's order must be upheld on any legal theory supported by the record. *Lindsey*, 2021 WL 3868310, at *6.

## B. TUFTA

TUFTA's purpose is to prevent debtors from prejudicing creditors by improperly moving assets beyond their reach. *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 89 (Tex. 2015) ("[TUFTA] is designed to protect creditors from being defrauded or left without recourse due to the actions of unscrupulous debtors."); *Nat'l Cleaners, LLC v. Aron*, No. 14-21-00549-CV, 2022 WL 3973591, at *4 (Tex. App.—Houston [14th Dist.] Sept. 1, 2022, no pet.) (mem. op.). Under TUFTA, a transfer made with actual or constructive intent to defraud any creditor may be avoided to the extent necessary to satisfy the creditor's claims. *See Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 566 (Tex. 2016).

The Act provides, in pertinent part:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
>> (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or
>>
>> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>>
>>> (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>>>
>>> (B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

Tex. Bus. & Com. Code § 24.005(a). A creditor may also obtain injunctive relief. *Id.* § 24.008(a)(3) (creditor remedies for fraudulent transfer include injunction). In determining actual intent under subsection (a)(1), TUFTA provides a list of eleven, nonexclusive indicia of fraudulent intent, which we discuss in more detail below. *Id.* § 24.005(b).

## C.     Application

### 1. *Is Salamanca a "creditor" for purposes of TUFTA?*

In their first issue, appellants argue that Salamanca lacks standing to bring TUFTA claims because he is not a "creditor." TUFTA defines creditor as "a person . . . who has a claim." *Id.* § 24.002(4). "Claim," in turn, is broadly defined to mean "a right to payment or property, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." *Id.* § 24.002(3).

6

Although Salamanca's right to recovery under his negligence claim is disputed and has not been reduced to judgment, Salamanca nonetheless has a "claim" as defined by TUFTA because he filed suit against the owner or owners of the Mira Vista Apartments seeking money damages for personal injuries. Because Salamanca has a "claim," he qualifies as a "creditor" under TUFTA. *Id.* § 24.002(4). Additionally, "[t]ort claimants . . . are entitled to file causes of action under TUFTA based upon pending, unliquidated tort claims." *Nat'l Cleaners*, 2022 WL 3973591, at *6 (citing *Nwokedi v. Unlimited Restoration Specialists, Inc.*, 428 S.W.3d 191, 198, 203-05 (Tex. App.—Houston [1st Dist.] 2014, pet. denied); *Blackthorne v. Bellush*, 61 S.W.3d 439, 443-44 (Tex. App.—San Antonio 2001, no pet.)); *see Hollins v. Rapid Transit Lines, Inc.*, 440 S.W.2d 57, 59 (Tex. 1969) (adopting rule allowing tort claimants to "maintain an action to set aside an alleged fraudulent conveyance" regardless whether or not the tort claim has been by judgment reduced to a liquidated and definite amount).[5] Therefore, we hold that Salamanca is a creditor under TUFTA.

We overrule appellants' first issue.

2. *Did Salamanca establish imminent, irreparable harm?*

In their second issue, appellants argue that the trial court erred in granting injunctive relief because Salamanca has an adequate remedy at law "in the form of his ongoing personal injury litigation" and thus failed to prove imminent and irreparable harm.

---

[5] TUFTA authorizes an independent "action" to set aside an allegedly fraudulent conveyance. Tex. Bus. & Com. Code § 24.010 (describing "cause of action" with respect to fraudulent transfers under the Act); *see also Hollins*, 440 S.W.2d at 59 (describing creditor's right to challenge an allegedly fraudulent conveyance as an "action").

An adequate remedy at law exists and injunctive relief is improper when any potential harm may be "adequately cured by monetary damages." *Ballenger v. Ballenger*, 694 S.W.2d 72, 77-78 (Tex. App.—Corpus Christi 1985, no writ). "However, a plaintiff does not have an adequate remedy at law if the defendant is insolvent." *Tel. Equip. Network, Inc. v. TA/Westchase Place, Ltd.*, 80 S.W.3d 601, 611 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (holding that trial court did not abuse its discretion when evidence demonstrated that an injunction was necessary to prevent action that would essentially render debtor insolvent, judgment-proof, or an empty corporate shell and thereby giving creditor no adequate remedy at law).

Here, the trial court heard evidence that Kalkan sold Vista to TXMV for ten dollars to make TXMV the new owner of the Mira Vista Apartments, encumbered TXMV with a $17 million loan, and then drained TXMV of most of its value. Based on that evidence, the court found that, without the temporary injunction, appellants would continue their practice of transferring assets and essentially render TXMV judgment-proof. This adequately explains that, if the assets were not frozen, there is a likelihood that there would not be enough money available to cover any potential damage awards arising from the underlying actions. *See Tex. Black Iron, Inc. v. Arawak Energy Int'l, Ltd.*, 527 S.W.3d 579, 587 (Tex. App.—Houston [14th Dist.] 2017, no pet.) ("Texas cases hold that a plaintiff does not have an adequate remedy at law if the defendant faces insolvency or becoming judgment proof before trial.").

We hold that the evidence supports the trial court's finding that Salamanca faced the threat of irreparable, imminent harm if the injunction did not issue. We overrule appellants' second issue.

8

### 3. *Is there evidence of badges of fraud?*

In their third issue, appellants argue that there is no evidence of the majority of the "badges of fraud."

Because direct proof of the debtor's intent is often unavailable, in determining whether a debtor had the actual intent to hinder, delay, or defraud a creditor, a court may consider circumstantial evidence, including the non-exclusive list of factors identified in TUFTA and commonly referred to as the "badges of fraud." *See* Tex. Bus. & Com. Code § 24.005(b) (listing factors). In determining a debtor's actual intent, the trial court may consider, inter alia, whether "before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit," "the transfer was of substantially all the debtor's assets," and "the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred." Tex. Bus. & Com. Code § 24.005(b)(4), (5), (9). Evidence of a single "badge of fraud" does not conclusively demonstrate intent, but a confluence of several presents a strong case of fraud. *See Janvey*, 487 S.W.3d at 566-67.

In his underlying suit, Salamanca sought monetary relief in excess of $1,000,000. Kalkan knew of Salamanca's injury before he transferred the Mira Vista Apartments to TXMV in exchange for ten dollars. Appellants knew that Salamanca had in fact filed a personal injury lawsuit at the time TXMV, as owner of the Mira Vista Apartments, incurred the $17 million loan. Shortly thereafter, TXMV divested itself of the loan proceeds to Kalkan himself or Kalkan-controlled entities. While TXMV retains its ownership interest in the Mira Vista Apartments, Salamanca presented evidence that the property is burdened with approximately

$25 million in liens,[6] far exceeding the county-appraised value of $19.5 million. In April 2020, TXMV's bank account showed a balance of $5,000.90. At the time of the hearing, Kalkan testified that there was "[n]ot much" money in TXMV's bank account.

Appellants dispute the Mira Vista Apartments' appraised value; they say the property is really worth $35-39 million. Appellants also contend that there was no intent to defraud and point to Kalkan's testimony establishing that "[i]t was the frequent practice of Fercan Kalkan and the entities he controls to take cash from the refinancing of one apartment property and use the cash to improve a separate property." The trial court was free to reject this contrary evidence. *E.g.*, *Buck v. Kozlowski*, No. 13-21-00123-CV, 2022 WL 1669146, at *3 (Tex. App.—Corpus Christi May 26, 2022, pet. denied) (mem. op.) (trial court does not abuse its discretion by making a decision on application for temporary injunction based on conflicting evidence and is the sole judge of the credibility of the witnesses and evidence).

In its order, the trial court found that "Defendants have so encumbered [TXMV] as to render it insolvent," that defendants had a "pattern of transferring funds in violation of TUFTA in an effort to place those funds beyond the reach of creditors," that appellants' continued transfer of assets out of TXMV threatened to "essentially render [TXMV] judgment proof," and that appellants "are likely to dissipate and use their remaining assets as they choose." We conclude the evidence in this case, when viewed in the light most favorable to the trial court's findings, supports the trial court's findings concerning the badges of fraud.

---

[6] The $25 million debt is comprised of the $17 million loan TXMV undertook in 2020 and a separate $8.1 million loan that Kalkan agreed at the hearing was part of Vista's initial purchase obligation. Kalkan also estimated that the Mira Vista Apartments' current indebtedness was "21 or 22 million."

10

Specifically, appellants had been sued before TXMV's loan and subsequent divestment, *see* Tex. Bus. & Com. Code § 24.005(b)(4), appellants transferred substantially all of TXMV's assets, *see id.* § 24.005(b)(5), and TXMV became essentially insolvent as a result of appellants' actions, *see id.* § 24.005(b)(9).

Because appellants' actions bore several indicia of fraud, we hold the trial court did not abuse its discretion in determining that Salamanca was entitled to injunctive relief under TUFTA. *See, e.g.*, *Tex. Kidney, Inc. v. ASD Specialty Healthcare*, No. 14-13-01106-CV, 2014 WL 3002425, at *6 (Tex. App.—Houston [14th Dist.] July 1, 2014, no pet.) (mem. op.) (upholding temporary injunction under TUFTA where, among other things, there was evidence that debtor had been threatened with suit before transferring substantially all of its assets); *accord also Metal Bldg. Components, LP v. Raley*, No. 03-05-00823-CV, 2007 WL 74316, at *7-9 (Tex. App.—Austin Jan. 10, 2007, no pet.) (mem. op.) (affirming finding of fraudulent transfer when, among other things, there was evidence that property was transferred to insider but transferor retained control over property, and transferor had been sued prior to transfer).

## Conclusion

We affirm the trial court's temporary injunction.


/s/    Kevin Jewell
       Justice


Panel consists of Chief Justice Christopher and Justices Jewell and Spain. (Christopher, C.J., concurring).